ACCEPTED
01-14-00216-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/20/2015 7:55:00 PM
CHRISTOPHER PRIN
CLERK

01-14-00216-CV

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/20/2015 7:55:00 PM
CHRISTOPHER A. PRINE
Clerk

VICTOR S. ELGOHARY

Appellant / Cross Appellee

V.

LAKES ON ELDRIDGE NORTH COMMUNITY ASSOCIATION, INC.;
REALMANAGE, LLC; DARLA KITCHEN; DON BYRNES; MICHAEL
ECKLUND; LAURA VASALLO LEE; JOHN KANE; JULIE ANN BENNETT;
RICK HAWTHORNE; CARA DAVIS; CHRISTI KELLER; JIM FLANARY;
JILL RICHARDSON; NEIL McLAURIN; WALTER SPEARS

Appellees,

V.

LAKES ON ELDRIDGE NORTH COMMUNITY ASSOCIATION, INC.
Cross Appellant

## APPELLEES' BRIEF

**LeClairRyan**
BRIANNE W. RICHARDSON
Email:
brianne. richardson@leclairryan.com
JAMES J. McCONN
Email:
james.mcconn.com@leclairryann.com
1233 West Loop South, Suite 1000
Houston, Texas  77027
Telephone:  713-654-1111
Facsimile:   713-650-0027

**Bartley & Spears**
Walter E. Spears
E-mail:
wspears@bartleyspears.com
Neil H. McLaurin, IV
E-mail:
nmclaurin@bartleyspears.com
14811 St. Mary's Lane, Suite 270
Houston Texas 77079
Telephone:  281-531-0501
Facsimile:   281- 493-1539

**ATTORNEYS FOR APPELLEES**

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES

**Appellant**
Victor S. Elgohary

**Counsel for Appellant**
Victor S. Elgohary
Bar No. 24067587
6406 Arcadia Bend Ct.
Houston, Texas 77041

Rosemary Jackson
Rosemary Jackson, P.C.
Bar No. 11671100
2016 Main
Houston, Texas 77002

**Appellees**
Lakes on Eldridge North Community Association, Inc.; RealManage, LLC; Darla Kitchen; Don Byrnes; Michael Ecklund; Laura Vasallo Lee; John Kane; Julie Ann Bennett; Rick Hawthorne; Cara Davis; Christi Keller; Jim Flanary; and Jill Richardson

**Counsel for Appellee**
LeClairRyan
Brianne W. Richardson
Bar. No. 24056500
Email:brianne.richardson@leclairryan.com
James J. McConn
Bar No. 13439700
Email: james.mcconn@haysmcconn.com
1233 West Loop South, Suite 1000
Houston, Texas 77027
Telephone: 713-654-1111
Facsimile: 713-650-0027

ii

05267.183 / 1649190.1

| **Cross-Appellant and Appellees** | **Counsel Cross-Appellant and Appellees** |
|---|---|
| Lakes on Eldridge North Community Association, Inc. (cross-appellants); Walter Spears* Neil McLaurin* | Walter E. Spears Bar No. E-mail: wspears@bartleyspears.com Neil H. McLaurin, IV Bar No. E-mail: nmclaurin@bartleyspears.com 14811 St. Mary's Lane, Suite 270 Houston Texas 77079 Telephone: 281-531-0501 Facsimile: 281- 493-1539 |

*Walter Spears and Neil McLaurin were never named as parties in the underlying lawsuit. Additionally, the record does not reflect that they were served with citation or made an appearance as parties. Accordingly, Elgohary's identification of Spears and McLaurin as "Appellees" in this proceeding is improper.

iii

# TABLE OF CONTENTS

INDENTITY OF THE PARTIES & COUNSEL ...................................................... ii

TABLE OF CONTENTS................................................................................iv

TABLE OF AUTHORITIES ......................................................................... viii

STATEMENT OF THE CASE....................................................................... xii

STATEMENT REGARDING ORAL ARGUMENT ........................................... xiii

STATEMENT REGARDING THE RECORD ...................................................... xiii

IDENTIFICATION OF PARTIES .....................................................................xiv

ISSUES FOR REVIEW ...................................................................................xv

STATEMENT OF FACTS .................................................................................2

    A. The Association's board of directors addresses LOEN safety concerns by regulating the use of an access gate and placing signs on Association property..........................................................................2

    B. Elgohary initiates this lawsuit against the Association, the Directors, and RealManage, and the Association files counterclaims under the Declaratory Judgment Act .......................................4

    C. The trial court grants Appellees' summary judgment and dismisses all of Elgohary's claims..................................................5

    D. The trial court denies Elgohary's request to join all LOEN property owners, and grants the Association's motion for protection ..............................................................................................7

    E. Following a bench trial on the Association's declaratory judgment claims, the trial court rules in favor of the Association and awards it attorney's fees. ........................................................8

SUMMARY OF THE ARGUMENT ..................................................................10

iv

ARGUMENT ...................................................................................13

I. THE TRIAL COURT PROPERLY DISMISSED ALL OF ELGOHARY'S CLAIMS BY SUMMARY JUDGMENT. ...............................................13

    A. Elgohary's Acknowledged Receipt of the Notice of Hearing and Motion for Summary Judgment Establishes that the Notice Requirements of Rules 21a and 166a were Satisfied. .............................13

    B. Elgohary Failed to Present Sufficient Summary Judgment Evidence in Response to Appellees' No-Evidence Motion and Therefore the Trial Court's Summary Judgment Was Proper. ................16

        1. Appellees' did not waive their no-evidence summary judgment motions. ...................................................................17

        2. Elgohary failed to establish that he needed additional time for discovery as required by Rule 166a, and therefore, the trial court did not abuse its discretion by granting the no evidence motion for summary judgment. .............................19

        3. The trial court properly dismissed the claims when Elgohary failed to raise a fact issue in response to Appellees' no-evidence summary judgment motion ...................................22

    C. The Trial Court Properly Granted Appellees' Traditional Motion for Summary Judgment on Elgohary's Claims Against the Association, and its Directors. .........................................24

        1. The summary judgment evidence establishes that the actions of the Association, the Directors and RealManage were authorized by: (a) the covenants, by-laws, and articles of incorporation; and (b) Texas Property Code §202.004. ....................26

            a. The uncontroverted summary judgment evidence establishes that the Association, the Directors, and RealManage were authorized to manage the use of the community access gates. ...........................................27

            b. The uncontroverted summary judgment evidence establishes that Appellees' placement of signs in the community did not violate the restrictive covenants ....................31

c. The uncontroverted summary judgment evidence establishes that the Association, the Directors, and RealManage managed and utilized LOEN funds and property reasonably and in good faith ......................................32

2. The Directors' affidavits are based on personal knowledge and supported by specific facts and examples of actions taken by the Directors for the safety and general welfare of the community. ...................................................................36

3. Elgohary's Requests for Sanctions Are Not Independent Causes of Action, and Therefore the Trial Court's Summary Judgment Disposed of All of His Claims............................................39

4. The trial court properly declined to write new law regarding derivative claims against non-profit organizations and dismissed Elgohary's derivative claims against the Directors and RealManage ...................................................................41

5. The trial court properly granted summary judgment in favor of the Directors based on their immunity under the Volunteer Protection Act and Texas Business Organizations Code §22.235....................................................................42

II. THE TRIAL COURT PROPERLY RENDERED JUDGMENT ON LOEN'S DECLARATORY JUDGMENT CLAIMS. .............................................45

A. The Trial Court Did Not Err in Refusing to Abate the Association's Counterclaims in order to Join Every LOEN Property Owner. ...................................................................47

B. The Trial Court Properly Determined That the Association's Governing Documents Only Prohibit the Placement of Signs in the Subdivision under Certain Circumstances. ........................53

C. The Association's Request for a Declaratory Judgment Regarding the Regulation of the West Little York Entry/Exit Was a Justiciable Controversy and the Court Did Not Err in Issuing a Declaratory Judgment against Elgohary Regarding Same. ..................................................................... 57

vi

III.    THE TRIAL COURT PROPERLY GRANTED APPELLEES' MOTION FOR
        PROTECTION. ................................................................................62

IV.     THE TRIAL COURT PROPERLY AWARDED THE ASSOCIATION ITS
        ATTORNEY'S FEES, BUT THIS COURT SHOULD REFORM THE AWARD
        TO REFLECT THE FEES ACTUALLY INCURRED. ............................... 64

        A. Elgohary Failed to Preserve This Issue for Appeal.................................65

        B. An Award of Attorney's Fees Under the Uniform Declaratory
           Judgments Act Was Appropriate and Authorized by Statute..................65

        C. The Record Supports An Award of Attorney's Fees. .............................67

        D. Elgohary Was Timely Served With Exhibits Relating to
           Attorney's Fees.......................................................................68

        E. The Association Established Reasonable, Necessary, Equitable
           and Just Attorney's Fees Independent of Attorney Fee Invoices.............70

        F. Elgohary Presented No Testimony as to Attorney's Fees........................73

PRAYER ..........................................................................................74

CERTIFICATE OF SERVICE ...........................................................76

CERTIFICATE OF COMPLIANCE...................................................76

INDEX OF APPENDICES ................................................................77

vii

# TABLE OF AUTHORITIES

## CASES

*Aquaduct, L.L.C. v. McElhenie*,
116 S.W.3d 438 (Tex. App.—Houston [14th Dist.] 2003, no
pet.) ..................................................................................................64

*Albertson's, Inc. v. Sinclair*,
984 S.W.2d 958 (Tex. 1999) .............................................................42

*Am. First Nat'l Bank v. Jordan-Lewis Dev., L.P.*,
No. 01-09-00990-CV 2011 Tex. App. LEXIS 5347(Tex. App—
Houston [1st Dist.] July 14, 2011, no pet.)........................................45

*Barshop v. Medina County Underground Water Conservation Dist.*,
925 S.W.2d 618, 629 (Tex. 1996) .....................................................66

*Bliss & Glennon Inc. v. Ashley*,
420 S.W.3d 379 (Tex. App.—Houston [1st Dist.] 2014, no pet.).................18

*Bocquet v. Herring*,
972 S.W.2d 19 (Tex. 1998) ...............................................................64

*Brooks v. Northglen Ass'n*,
141 S.W.3d 158 (Tex. 2004) .............................................................48

*Brown v. Brown*,
236 S.W.3d 343 (Tex. App. Houston 1st Dist. 2007, no pet.) .....................46

*Brown v. Capital Bank, N.A.*,
703 S.W.2d 231 (Tex.App—Houston [14th Dist.] 1985, no
writ)..................................................................................................14

*Caldwell v. Callender Lake Property Owners Improvement
Association*,
888 S.W.2d 903 (Tex.App.—Texarkana 1994, no pet.) ..........................48

*Chapman v. Marathon Mfg. Co.*,
590 S.W.2d 549 (Tex. Civ. App.—Houston [1st Dist.] 1979, no
writ)..................................................................................................60

05267.183 / 1649190.1

*City of Keller v. Wilson*,
   168 S.W.3d 802 (Tex. 2005) ..........................................................45

*Compton v. Calabria*,
   811 S.W.2d 945 (Tex. App.—Dallas 1991, no pet.) ....................................24

*Denso Corp. v. Hall*,
   396 S.W.3d 681, 688 (Tex. App—Houston [14th Dist.] 2013,
   no pet.) ..........................................................................60

*Doe v. Roman Catholic Archdiocese*,
   362 S.W.3d 803 (Tex.App.—Houston [14th Dist.] 2012, no
   pet.) ......................................................................19, 20, 22

*Epernay Cmty. Ass'n v. Shaar*,
   349 S.W.3d 738 (Tex.App.—Houston [14th Dist.] 2011, no
   pet.) ......................................................................48, 49, 51

*Ford Motor Co. v. Ridgway*,
   135 S.W.3d 598 (Tex. 2004) ..........................................................16

*Goforth v. Bradshaw*,
   296 S.W.3d 849 (Tex.App.—Texarkana 2009, no pet.) ..............................14

*Gonzales v. Surplus Ins. Servs.*,
   863 S.W.2d 96, 101 (Tex.App.—Beaumont 1993, no pet.) ........................14

*Goodyear Tire & Rubber Co. v. Jefferson Constr. Co.*,
   565 S.W.2d 916 (Tex. 1978) ..........................................................65

*Jarvis v. Rocanville Corp.*,
   298 S.W.3d 305 (Tex.App.—Dallas 2009, pet. denied) ............................71

*Joe v. Two Thirty Nine J.V.*,
   145 S.W.3d 150 (Tex. 2004) ............................................19, 20, 21, 22

*Lane Bank Equip. Co. v. Smith S. Equip., Inc.*,
   10 S.W.3d 308 (Tex. 2000) ........................................................39, 40

*Long v. State Farm Fire & Casualty Co.*,

ix

828 S.W.2d 125 (Tex. App.—Houston [1st Dist.] 1992, no pet.)..................24

*Mantri v. Bergman*,
153 S.W.3d 715 (Tex.App.—Dallas 2005, pet. denied) .............................39

*McNeil v. Time Ins. Co.*,
205 F.3d 179 (5th Cir. 2000, cert. denied) ....................................................41

*Nelson v. Big Woods Springs Improvement Ass'n*,
322 S.W.3d 678 (Tex.App.—Texarkana  2010, pet. denied)........................65

*Netherland v. Wittner*,
662  S.W.2d  786  (Tex.App.—Houston  [14th  Dist.]  1983,  no
writ)............................................................................................................14

*Noble Mortg. & Invs. LLC v. D&M Vision Invs.*, LLC,
340  S.W.3d  65,  74-75  (Tex.  App.—Houston  [1st  Dist.]  2011,
no pet.) ...................................................................................................46, 53

*Petroleum Analyzer Co. LP v. Olstowski*,
2010  Tex.  App.  LEXIS  5581  at  *47-48  (Tex.App.—Houston
[1st Dist.] July 15, 2010, no pet.) ...............................................................64

*Priddy v. Rawson*,
282  S.W.3d  588  (Tex.  App.—Houston  [14th  Dist.]  2009,  pet.
denied) ........................................................................................................18

*Pulido v. Gonzalez*,
2013  Tex.  App.  LEXIS  11096,  2013  WL  4680415  (Tex.  App—
Houston [1st Dist.] 2013, no pet.) .........................................................16, 17

*Rizkallah v. Conner*,
952 S.W.2d 580 (Tex. App.—Houston [1st Dist.] 1997)............................23

*Rockwall Commons Assocs. v. MRC Mortg. Grantor Trust I*,
331 S.W.3d 500 (Tex.App—El Paso, 2010) ...............................................37

*Royal Petroleum Corp. v. Dennis*,
332 S.W.2d 313 (Tex. 1960) .......................................................................47

x

*Shih v. Tamisiea*,
   306 S.W.3d 939 (Tex.App—Dallas 2010, no pet.) .......................................13

*Tovar v. Mazza*,
   1999 Tex. App. LEXIS 2222, 1999 WL 174064 *4 (Tex.
   App.—San Antonio Mar. 31, 1999, no pet.....................................................65

*Unifund CCR Partners v. Villa*,
   299 S.W.3d 92 (Tex. 2009) .........................................................................40

*Union Bankers Ins. Co. v. Shelton*,
   889 S.W.2d 278 (Tex. 1994) .......................................................................41

*Uptegraph v. Sandalwood Civic Club*,
   312 S.W.3d 918 (Tex. App.—Houston [1st Dist.] 2010, no pet.)...........26, 27

*Western Invs., Inc. v. Urena*,
   162 S.W.3d 547 (Tex. 2005) .......................................................................13

*Williams v. County of Dallas*,
   194 S.W.3d 29 (Tex. App—Dallas 2006, pet. denied.) ..............................70

## STATUTES AND RULES

42 U.S.C.S. § 14503 .........................................................................................43

TEX. BUSINESS ORGANIZATIONS CODE § 22.001 ......................................44

TEX. BUSINESS ORGANIZATIONS CODE § 22.235 ................................42, 43

TEX. CIV. PRAC. & REM. CODE §10.002...........................................................39

TEX. CIV. PRAC. & REM. CODE § 37.006 ..........................................................48

TEX. CIV. PRAC. & REM. CODE § 37.009 ..........................................................66

TEX. CIV. PRAC. & REM. CODE § 37.010 ..........................................................45

TEX. PROP. CODE § 202.004 .............................................................................26

TEX. R. APP. P. RULE 33....................................................................................65

TEX. R. CIV. P. 21A ........................................................................................14

TEX. R. CIV. P. 39 ..........................................................................................47

TEX. R. CIV. P. 66 ..........................................................................................45

TEX. R. CIV. P. 94 ..........................................................................................44

TEX. R. CIV. P. 166A ......................................................................................19

Tex. R. Civ. P. 193 ........................................................................................69

TEX. GOV'T CODE § 312.005 ..........................................................................41

05267.183 / 1649190.1

# STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case and Parties:* | This lawsuit arises from dispute between a homeowner and his homeowners' association ("HOA"), its directors, and property management company. The homeowner initiated the lawsuit against the HOA, its directors and property management company asserting individual and representative claims for breach of fiduciary duty, negligence, conversion, theft liability act, conspiracy, aiding and abetting, piercing the corporate veil, trespass, breach of contract, and ultra vires acts. Each of these claims was based on the homeowner's unsubstantiated claims that the defendants misappropriated funds, regulated the use of certain access gates, and placed signs around the neighborhood in violation of the covenants and by-laws. The HOA filed counterclaims against the homeowner seeking a declaration that it had authority to: (1) regulate the use of entry/exit gates; and (2) place signs in the community. |
| *Trial Court:* | The Honorable Wesley Ward, in the 234th District Court of Harris County, Texas. Cause No. 2013-17221, *Elgohary v. Lakes on Eldridge North Community Assoc., Inc. et al.* |
| *Trial Court Disposition:* | The HOA, its directors, and property management company filed a hybrid, traditional and no-evidence motion for summary judgment on all of the homeowner's claims against them based on multiple grounds. The motion was granted in it its entirety without specifying the grounds for summary judgment. (App.1) The court later denied the homeowner's motion for sanctions against the HOA's attorneys. The HOA's declaratory judgment claims were tried to the court. The court rendered judgment in favor of the HOA and awarded attorney's fees of $20,000. (App.2.) |

05267.183 / 1649190.1

## STATEMENT REGARDING ORAL ARGUMENT

Due to the factual background and the multiple issues raised by the appeal and cross-appeal, Appellees believe that oral argument might aid this Court in its understanding of the facts. For this reason, oral argument is requested.

## STATEMENT REGARDING THE RECORD

The clerk's record is comprised of one original volume and a first supplemental volume. The original volume will be referred to as (CR) and the first supplemental volume will be referred to as (1-CR).

The reporter's record is comprised of seven volumes, which will be referred to as 1-RR, 2-RR, 3-RR, 4-RR, 5-RR, 6-RR, and 7-RR respectively.

05267.183 / 1649190.1

# IDENTIFICATION OF THE PARTIES

In this case, a homeowner (Appellant-Elgohary) has filed a lawsuit against the homeowner's association (Lakes of Eldridge North Community Association, Inc.), past and former volunteer directors on the association's board, a property management community (RealManage, LLC), and the lawyers representing them (Walter Spears and Neil McLaurin)(collectively referred to as "Appellees"). In light of the parties, claims, and cross-claims, the following summary is provided regarding party identification for the convenience of the Court:

| Party | Referred to as: |
|---|---|
| Appellant/Cross-Appellee: Victor Elgohary | Elgohary |
| Appellee/Cross-Appellant: Lake of Eldridge North Community Association, Inc. | The Association |
| Appellees: RealManage, LLC Christi Keller | Collectively referred to as RealManage |
| Appellees: Darla Kitchen Don Byrnes Michael Ecklund Laura Vasallo Lee John Kane Julie Ann Bennett Rick Hawthorne Cara Davis Jim Flanary Jill Richardson | Collectively referred to as the "Directors" |
| Appellees: Walter Spears Neil McLaurin | Collectively referred to as Association's Counsel |

05267.183 / 1649190.1

# ISSUES FOR REVIEW

ISSUE 1: Whether the Trial Court Properly Granted Summary Judgment Dismissing All of Appellant's Individual and Derivative Claims Against Appellees?

> Sub-issue 1: Whether Appellant can challenge the sufficiency of notice after he: (1) conceded actual receipt summary judgment motion and notice of hearing; (2) agreed to resetting of submission date in open court, and (3) participated in summary judgment proceedings?

> Sub-issue 2: Whether Appellees' clarification that they "only seek traditional summary judgment" on issues related to authority and immunity constitutes a waiver of their no-evidence motion for summary judgment in the absence of an express statement of waiver?

> Sub-issue 3: Whether a trial court abuses its discretion by denying a continuance of summary judgment proceeding when the non-movant fails to meet the evidentiary requirements of Rule 166a regarding continuances?

> Sub-issue 4: Whether Appellees' summary judgment evidence established the Association's actions were authorized by the community's governing documents?

> Sub-issue 5: Whether Appellees' summary judgment affidavits were sufficiently supported by controvertible facts and examples?

> Sub-issue 6: Whether a sanctions motion asserted against a party's counsel constitutes a "cause of action" which requires adjudication before final judgment?

> Sub-issue 7: Whether a derivative claims can be asserted against a non-profit organization under the Texas Business Organizations Code?

> Sub-issue 8: Whether Appellees established that volunteer directors on a homeowner's association are protected by the Volunteer Protection Act and/or Texas Business Organizations Code §22.235 as a matter of law?

05267.183 / 1649190.1

ISSUE 2: Whether the Trial Court Properly Rendered Judgment on the Association's Declaratory Judgment Claims against Appellant?

Sub-issue 1: Whether the trial court abused its discretion when it refused to abate the Association's claims and join all homeowners in the subdivision to the lawsuit?

Sub-issue 2: Whether the trial court properly determined that there was a justiciable controversy regarding the LOEN's covenants and that the plain language of LOEN's covenants established that: (1) the Association could regulate its entry/exits gates; and (2) the Association could place signs on LOEN property provided that it the signs did not relate to construction, improvement, alteration, or addition to the Lots?

ISSUE 3: Whether the Trial Court Abused its Discretion When it Determined that Appellees were entitled to protection from Appellant's discovery requests?

ISSUE 4: Whether the Trial Court's Award of Attorneys' Fees in Favor of the Association on its Declaratory Judgment Claims Constituted an Abuse of Discretion?

xvii

01-14-00216-CV

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

VICTOR S. ELGOHARY

Appellant / Cross Appellee

V.

LAKES ON ELDRIDGE NORTH COMMUNITY ASSOCIATION, INC.;
REALMANAGE, LLC; DARLA KITCHEN; DON BYRNES; MICHAEL
ECKLUND; LAURA VASALLO LEE; JOHN KANE; JULIE ANN BENNETT;
RICK HAWTHORNE; CARA DAVIS; CHRISTI KELLER; JIM FLANARY;
JILL RICHARDSON; NEIL McLAURIN; WALTER SPEARS

Appellees,

V.

LAKES ON ELDRIDGE NORTH COMMUNITY ASSOCIATION, INC.
Cross Appellant

## APPELLEES' BRIEF

TO THE HONORABLE COURT OF APPEALS:

APPELLEES, Lakes on Eldridge North Community Association, Inc. ("the

Association"), RealManage, LLC and Christi Keller (collectively "RealManage"),

Darla Kitchen, Don Byrnes, Michael Ecklund, Laura Vasallo Lee, John Kane, Julie

Ann Bennett, Rick Hawthorne, Cara Davis, Jim Flanary, and Jill Richardson

(collectively the "Directors"), submit their Appellees' Brief and request that this

Honorable Court: (1) affirm the trial court's October 12, 2013 summary judgment

1

05267.183 / 1649190.1

order dismissing Elgohary's claims in its entirety; and (2) affirm the March 13, 2014 judgment. By cross-appeal, the Association requested that this Honorable Court reform the amount of the attorneys' fees award as set forth in its previously filed Cross-Appellant's Brief.[1]

Neil McLaurin and Walter Spears were never named as parties to the underlying action or served with citation. Accordingly, the Association's counsel should not have been identified as parties to this appeal.

## STATEMENT OF FACTS

The Lakes of Eldridge North is a Harris County subdivision ("LOEN") managed by Appellee, the Association. (CR.196-97.) The Association is a non-profit homeowner's association organized under the Texas Non-profit Corporation Act that is authorized to "enforce and manage the Declaration of Covenants, Conditions and Restrictions" ("LOEN's Deed Restrictions") applicable to the Subdivision. (CR.239.) To assist with the enforcement of LOEN's Deed Restrictions, the Association retains the services of a property management company, Appellee, RealManage. (CR.177.)

**A. The Association's board of directors addresses LOEN safety concerns by regulating the use of an access gate and placing signs on Association property.**

---

[1] http://www.search.txcourts.gov/SearchMedia.aspx?MediaVersionID=01d01a75-14ee-4b3f-8913-30f53c3fce11&coa=coa01&DT=Brief&MediaID=9def6c7f-e277-41d7-af74-25908ce769ec

05267.183 / 1649190.1

LOEN is a gated community with two entry gates: (1) a primary, guarded entry gate at Tanner Road; and (2) an unguarded entry gate at West Little York. (CR.105, 156; see e.g. App.7) After learning of safety concerns of other LOEN residents, the acting Directors[2] on the Association's board "decided to restrict access through the access gate located West Little York between 11:00 pm and 5 am. (CR.246, 249, 254, 257, 268, 270; see e.g. App.7) Specifically, community members had raised concerns regarding tailgating at the security gate and security issues regarding the property in general. (Id.) The issue was decided by a vote of the acting board in accordance with LOEN's Deed Restrictions and other governing documents. (Id.) The Association also decided to place signs in the neighborhood to direct visitor traffic. (Id.)

After changing the access schedule, the Association continued to investigate whether the changes benefited the community. (Id.) Several town hall meetings were held so that any resident could comment on the gate access issues or any other community management issues. (CR.246; App.7.). A survey was conducted to ascertain whether the residents preferred restricting late night access through the

---

[2] The record reflects that Appellees, Kitchens, Byrnes, Vassallo-Lee, Kane, Flanary, and Richardson were active board members that took part in decision to regulate the gate. (CR.246, 249, 254, 257, 268, 270; App.7) Appellees, Davis, Hawthorne, and Bennett started their terms on the Association board after these actions were taken. (CR.260, 263, 265.) Additionally, Appellee, Ecklund was not on the board at the time these decision were made (CR.251.) Appellee, Flanary did not participate in the decision to place signs. (CR.267; see also CR.175, n.1.)

3

West Little York access gate. (CR.249; App.7.)  Additionally, the Directors consulted with the Harris County Fire Marshal and the CyFair Volunteer Fire Department to ensure that emergency vehicles could utilize the gates during the restricted hours. (Id.; App.7.)  They also consulted a real estate expert to make certain the changes did not violate any city ordinances or create easement issues. (Id.; App.7)  At all times, the Directors followed the procedures set forth in the Covenants and Subdivision By-laws regarding the management of the property. (CR.246; CR.249; CR.254; CR.257; CR.268; CR.270; App.7.)

## B. Elgohary initiates this lawsuit against the Association, the Directors, and RealManage, and the Association files counterclaims under the Declaratory Judgment Act.

Appellant, Elgohary owns a single family home located within the LOEN. (CR.101.) Elgohary disputed the Association's actions with regard to the access gates and addition of traffic signs as well as its use of LOEN funds. (CR.103-105; CR.107-109; CR.156-157.) After demanding the Association's records, Elgohary was given the opportunity to review the records regarding his dispute.  (CR.595.)

He subsequently filed this lawsuit asserting: (1) individual claims of trespass to real property and breach of contract, and (2) "derivative" claims including breach of fiduciary duty, negligence, conversion, Theft Liability Act, aiding and abetting, and piercing the corporate veil. (CR.109-112.)  These claims allegedly arose from his belief that: (1) the Association did not have authority to restrict the

4

use of the access gates; (2) the Association did not have authority to place any signs anywhere on community property; and (3) the Association, the Directors, and/or RealManage had misappropriated and/or mismanaged LOEN's funds. (CR.102-109.) Elgohary later amended his petition to include a sanctions motion against the Association's counsel, Neil McLaurin and Walter Spears. (CR.113.) He did not assert any causes of action against the Association's counsel, name them as parties, or serve them with citations. Accordingly, the Association's counsel were never added as parties to the case.

Due to the ongoing disputes between the Association and Elgohary beyond the scope of Elgohary's affirmative claims, the Association filed counterclaims under the Texas Declaratory Judgment Act to affirm its authority under the deed restrictions and secure a final resolution between the parties. (CR.154-169.) Specifically, the Association asked the trial court to declare that, pursuant to the LOEN's Deed Restrictions:

1. The Association is permitted to regulate the use of the West Little York access gate. (CR.158.)

2. The Association is not prohibited from placing signs on Subdivision property. (CR.159.)

### C. The trial court grants Appellees' summary judgment and dismisses all of Elgohary's claims.

On August 21, 2013, Appellees filed a hybrid no-evidence and traditional motion for summary judgment. (CR.174-271.) Appellees' no-evidence motion

5

challenged each of Elgohary's causes of action against them. (CR.189-194.) Additionally, Appellees presented evidence to support their traditional summary judgment arguments that: (1) Elgohary is not permitted to sue derivatively; (2) the Directors acted within the scope of their authority pursuant to the Subdivision's governing documents and Texas Property Code §202.004; and (3) the Directors are volunteers that are immune from liability under the Volunteer Protection Act and Texas Business Organizations Code §22.235. (CR.178-179; CR.196-271.)

That same day, Appellees also filed objections and a motion for protection from Elgohary's voluminous discovery requests to each of the Appellees. (CR.560; CR.272-510.) Elgohary had served Appellees with approximately 590 separate discovery requests related to a wide variety of issues. (CR.283-510.) Among its objections, Appellees requested that the trial court stay their discovery responses until it had ruled upon on its summary judgment motions. (CR.277.)

Both Appellees' summary judgment motion and motion for protection were served on Elgohary by e-mail pursuant to a prior agreement between the parties. (CR.174; CR.195; CR.560; CR.569.) Despite both motions being emailed the same day, Elgohary claimed to receive the motion for protection on August 21, 2013 (CR.560) and the motion for summary judgment "five to ten days" later "at most." (3-RR at12:15-20.) Elgohary timely responded to both motions prior to the oral hearing on both motions held on September 16, 2014. (3-RR; CR.532-561.)

6

At the oral hearing, Elgohary complained that he had not received proper notice of the summary judgment motion. (3-RR.10:25-16:15.) The trial court verified that Elgohary had received actual service of notice and the motion itself. (Id. at 12:15-20.) The trial court then asked both parties if resetting the summary judgment motion for twenty one days from the original hearing date would be sufficient. (Id. at 13:16-19.) He further stated that he would reset the oral hearing on Appellee's motion for protection *after* the summary judgment submission date. (Id. at 14:21-15:12). No party objected to the court's scheduling. (3-RR.10:25-16:15.)

In the time between the original hearing and the re-set submission date, Elgohary filed an amended summary judgment response supported only by his own affidavit. (CR.578-599.)

After considering the summary judgment motions by submission, the trial court granted the traditional and no-evidence summary judgment motions in their entirety. (CR.606.)

### D. The trial court denies Elgohary's request to join all LOEN property owners, and grants the Association's motion for protection.

Elgohary first raised the issue of joinder in special exceptions (CR.42-43), in which he indicated that the proper parties to the Association's counterclaim would be:

7

all of the homeowners in the Lakes on Eldridge North subdivision that are bound by these declarations of covenants, conditions and restrictions. (CR.43.)

The trial court overruled Elgohary's special exception on this issue on June 10, 2013 after a hearing on the same. (CR 171.)

Elgohary next raised the issue of joinder in his Plea in Abatement and Special Exceptions. (CR 611-616.) In neither of his original special exceptions, his plea to the jurisdiction nor his second round of special exceptions did Elgohary ask that the City of Houston or any other municipality be joined, which he now raises on appeal. The Court denied Elgohary's plea in abatement and overruled his second special exception on the joinder issue on December 9, 2013 after a hearing on same. (CR 617.)

Additionally, as discussed above, Appellees filed global objections and motion for protection from Elgohary's preliminary 590 discovery requests. (CR.272-509.) After Elgohary's claims were dismissed, the Association filed another motion for protection in response to notice of deposition and continued overbroad requests for discovery. (CR.633-706.) Following a hearing on the motions, the trial court granted the Association's motion for protection on January 27, 2014. (CR.879-80.)

> **E. Following a bench trial on the Association**'s **declaratory judgment claims, the trial court rules in favor of the Association and awards it attorney's fees.**

8

The Association's counterclaims under the Declaratory Judgment Act were tried to the court on March 13, 2014. After presenting its case regarding the deed restrictions at issue in its counterclaims, the Association introduced the expert testimony of attorney Neil Hugh McLaurin, IV ("McLaurin") in support of its claim for attorney's fees (RR6, p. 66, line 10–p. 85, line 10; APP 3). The Association also introduced into evidence invoices relating to the requested attorney's fees (7-RR, Exhibit 14 at p. 68–136.)

McLaurin testified in detail as to the work performed by the Association's attorneys in prosecuting its claims against Elgohary from February 2013 through trial in March 2014 (6-RR.69-77.) He clarified that his testimony only related to the fees incurred relating to the Association's counterclaim, as opposed to other claims in the litigation. (Id. at 69-76.) McLaurin testified as to the factors he considered in forming an opinion on what amount of fees would be reasonable, necessary, equitable and just relating to the Association's counterclaim, as well as a range of amounts for said attorney's fees. (Id. at 77–78). McLaurin stated that in his opinion, the majority of attorney's fees incurred by the Association were a result of actions by Elgohary. (Id. at 78-79). In summary, McLaurin opined that the total attorney's fees incurred would be $42,450.00. (Id. at 77:4-9.)

Elgohary did not present any testimony to the trial court as to what amount of fees would be reasonable, necessary, equitable and/or just. He also did not

9

present any evidence or testimony whatsoever to rebut the expert testimony of

McLaurin. (Id. at 85:18-23.) The trial court stated the following with regard to the

award of attorney's fees through trial:

> Now, I'm going to arbitrarily reduce the award for attorney's fees in this case to $20,000. If you're unhappy with that reduction, you can certainly take that up on appeal. If there's appeal of this matter, you can certainly take up my completely arbitrary reduction from your $42,000 request, which is probably and, in fact, I do find is completely reasonable and necessary attorney's fees, but I'm going to arbitrarily strike it down to $20,000. (Id. at 94:6-15.)

The trial court rendered judgment in favor of the Association, and issued the

following declarations:

1. …the Association is permitted to regulate the use of the West Little York entry/exit gate.

2. …the Association is not prohibited from placing signs on Associations property, so long as said signs do not relate to the construction, improvement, alteration, or addition to Lots within the Subdivision.

The final judgment entered in this case on March 13, 2014 awarded $20,000 for

attorney's fees to LOEN through trial (App.2.)

## SUMMARY OF THE ARGUMENT

This case arises from ongoing disputes between a homeowner(Appellant-

Elgohary) and his homeowner's association (Appellee-the Association) regarding

certain actions taken by the homeowner's association. Specifically, the homeowner

disputes the following actions of the Association: (1) the decision to restrict late-

10

night access at one of the community's two gates; (2) the decision to place signs on Association property directing visitor traffic; and (3) unspecified expenditures and management of the community's funds. Based on these complaints, the homeowner filed individual and derivative claims against the Association, its past and present board of directors and its property management company. Due to the ongoing nature of the disputes with the homeowner regarding the gates and signs, the Association filed counterclaims seeking a declaration regarding its authority to regulate the gates and place signs under the applicable community restrictive covenants.

The appeal raises a combination of procedural issues and substantive issues related to the dismissal of the Appellant's claims by summary judgment and the rendering of declaratory judgment and award of attorneys' fees in favor of the Association.

Summary judgment issues: In response to Appellees' hybrid no-evidence and traditional motion for summary judgment on his claims, Elgohary failed to present competent summary judgment to raise a fact issue regarding any of his claims. Instead, he sought to avoid summary judgment on technical and procedural grounds. The trial court properly granted summary judgment after determining that: (1) Elgohary had received sufficient notice of the motion and submission; (2) Elgohary had adequate time to secure discovery; (3) Appellees'

11

summary judgment evidence, including their affidavits, constituted competent summary judgment evidence, and (4) the summary judgment evidence warranted dismissal of all of Elgohary's claims as a matter of law.

Declaratory judgment issues: At a bench trial regarding the interpretation of the Association's restrictive covenants, the trial court properly determined that the Association's counterclaims were separate and distinguishable from Elgohary's dismissed claims and that the counterclaims involved a justiciable controversy existed between the parties. After hearing the uncontroverted testimony of the Association's counsel regarding attorneys' fees, the trial court, in its discretion, awarded attorneys' fees to the Association. Prior to trial, the trial court also determined that the Association's counterclaims did not require the joinder of all homeowners within the community in accordance with well-settled law regarding the joinder of parties. Specifically, the court determined that the declaratory judgment sought by the Association would not adjudicate new rights related to other property owners, but rather reaffirm the Association's pre-lawsuit position that it had authority to regulate community gates and place signs on community property. Additionally, the court's decision to preclude Elgohary's voluminous discovery in a declaratory judgment case that required only the review and interpretation of deed restrictions is consistent with the requirements of the Texas Rules of Civil Procedure.

12

On appeal, Elgohary fails to raise any issue or point to any evidence in the record to warrant reversal of either of the trial court's judgments. Accordingly, the trial court's judgment should be affirmed.

## ARGUMENT

**I. THE TRIAL COURT PROPERLY DISMISSED ALL OF ELGOHARY'S CLAIMS BY SUMMARY JUDGMENT.**

On October 12, 2013, the trial court granted the Association, RealManage, and the Directors' traditional and no-evidence summary judgment motion and dismissed all of Elgohary's individual and derivative claims with prejudice. (CR.606.) The order reflected that it found the summary judgment motion to be with merit in its entirety and did not specify a particular grounds for summary judgment. (Id.)

When a trial court's summary judgment order does not specify the ground upon which it was rendered, the appellate court must affirm the summary judgment if *any* of the grounds stated in the motion is meritorious. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). Accordingly, a party challenging such an order must negate *all* possible grounds upon which summary judgment could have been granted to prevail on appeal. *Shih v. Tamisiea*, 306 S.W.3d 939, 944 (Tex.App—Dallas 2010, no pet.)

**A. Elgohary's Acknowledged Receipt of the Notice of Hearing and Motion for Summary Judgment Establishes that the Notice Requirements of Rules 21a and 166a were Satisfied.**

13

The purpose of the service requirements under Rule 21a and 166a are "to achieve *actual notice* and to set up presumptions to use in disputes about whether notice was achieved." *Goforth v. Bradshaw*, 296 S.W.3d 849, 854 (Tex.App.—Texarkana 2009, no pet.)(holding that timely service by regular mail fulfilled 21a requirements). Accordingly, courts have repeatedly held that proof of actual notice and opportunity to respond will establish compliance with Rule 21a. *Id.*; see also *Netherland v. Wittner*, 662 S.W.2d 786, 787 (Tex.App.—Houston [14th Dist.] 1983, no writ)(holding that an appellant's admission of actual receipt of trial setting and full participation in trial fulfill Rule 21a requirements); *Brown v. Capital Bank, N.A.*, 703 S.W.2d 231, 233 (Tex.App—Houston [14th Dist.] 1985, no writ)(holding that party could not complain about insufficient notice of hearing re-set on multiple occasions and by trial court.). Further, "under certain circumstances, a party's actions or non-action can constitute a waiver of procedural due process rights" regarding service of summary judgment. *Gonzales v. Surplus Ins. Servs.*, 863 S.W.2d 96, 101 (Tex.App.—Beaumont 1993, no pet.)

The record reflects that Elgohary received the summary judgment motion and notice of the submission date regarding his causes of action against Appellees more than twenty-one (21) days prior to the submission date and the court's order. (3-RR.10-16.) The summary judgment motion was filed and served on Elgohary on August 21, 2013, in accordance with Elgohary's agreement to receive service

14

by e-mail. (CR.174, 195, 569.) Elgohary acknowledged receiving the summary judgment in his timely filed response. (CR.550 at ¶13)(stating that "[t]his summary judgment motion was only sent to me by email.").

Appellees provided Elgohary with twenty-six days notice of the first oral hearing on the motion. (CR.174;195,570, 3-RR.1.) During the preliminary oral hearing on the summary judgment motion, Elgohary objected based on insufficient service. (3-RR.10-16.) When directly asked by the trial court if he conceded receipt of the motion, he stated "I got it by e-mail." (Id. at 12:4-7.) He stated that he received "actual notice of when I actually read this was probably later that week, probably five to ten days at the most after it was in my inbox." (Id. at 12:15-20.)

When the court asked if a twenty-one day re-setting of the summary judgment motion would be sufficient, Elgohary did not oppose or object. (Id. at 12:14-16:5.) Elgohary then filed a timely amended summary judgment response to the re-set hearing date. (CR.578.) Accordingly, Elgohary had forty-seven days notice from the date that the motion was sent. Assuming that Elgohary "received" the motion ten days after the e-mail was sent, the record shows that he had thirty-seven days notice of the October 7, 2013 submission date that was set by the trial court.

15

The record also reflects that Elgohary was selective as to which motions he accepted by email. Appellees served a motion for protection contemporaneously with their summary judgment motion. (CR.195; CR.549.) In an affidavit supporting his summary judgment response, Elgohary stated that he received the motion for protection "on August 21, 2013 by email." (CR.549.) In the same affidavit, he swears that he received the summary judgment by email. (CR.550). Elgohary should not be permitted to selectively receive service of some documents by e-mail after proposing that the parties accept such service methods.

After receiving actual notice of the submission date and fully and timely participating in the summary judgment proceedings, Elgohary cannot now complain that he did not have sufficient notice under the Rules. In light of Elgohary's concession that he received actual notice of the summary judgment motion, his claims on appeal regarding insufficient service should be rejected.

### B. Elgohary Failed to Present Sufficient Summary Judgment Evidence in Response to Appellees' No-Evidence Motion and Therefore the Trial Court's Summary Judgment Was Proper.

When a hybrid motion for traditional and no-evidence summary judgment is filed, the court should consider the no-evidence motion for summary judgment first. *Pulido v. Gonzalez*, 2013 Tex.App. LEXIS 11096 *3, 2013 WL 4680415 *1 (Tex. App—Houston [1st Dist.] 2013, no pet.)(citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 816 (Tex. 2004)). If the movant presented a proper no-evidence

05267.183 / 1649190.1

motion for summary judgment and the non-movant failed to produce more than a scintilla of evidence to support its claims, there is no need to analyze the traditional motion for summary judgment. *Id.*

On appeal, Elgohary only challenges the no-evidence summary judgment on the grounds that: (1) the motion was waived; and (2) he did not have adequate time for discovery. See Appellant's Brief.15-20. He does not argue that he presented sufficient summary judgment evidence to raise a fact issue in response to Appellees' no-evidence summary judgment motion. (Id.) Similarly, Elgohary's summary judgment response does not respond to any of Appellees' no-evidence arguments or present evidence to support the elements of his claims. (CR.578-99.) Appellees' no-evidence motion addressed each and every claim asserted by Elgohary in his live pleading. (Compare CR.109-113 to CR.189-194.) Accordingly, if Elgohary does not prevail on his waiver and continuance arguments, the trial court's summary judgment order should be affirmed based on Appellees' no-evidence motion alone.

### 1. Appellees' did not waive their no-evidence summary judgment motions.

Elgohary's first issue on appeal confuses both procedural rules and the facts of the case. Elgohary attempts to argue that the Association waived its no-evidence arguments by confusing two distinct procedural issues: (1) argument waiver and (2) judicial admission that results in claim waiver. Argument waiver

17

occurs when a party fails to expressly present an argument to the trial court. *Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Claim waiver by judicial admission occurs when a party makes a statement that dispenses with the production of evidence regarding the substantive elements of a party's claims or defenses. *Bliss & Glennon Inc. v. Ashley*, 420 S.W.3d 379, 393 (Tex. App.—Houston [1st Dist.] 2014, no pet.) In this case, Appellees' did not waive any summary judgment arguments *or* judicially admit any facts contrary to their claims and/or defenses.

Elgohary further convolutes the issue by misinterpreting a clarification in Appellees' summary judgment reply with a "judicial admission" of waiver. In his summary judgment response, Elgohary argued that Appellees' summary judgment should be denied because "Defendants have not negated any of Plaintiff's elements on each cause of action" (CR.585.)

To clarify its traditional summary judgment argument, Appellees' reply to Elgohary's summary judgment response stated:

> Defendants seek only a traditional motion for summary judgment on their arguments and authorities concerning Association governing documents and statutes which provide immunity to them. (CR.601.)

Appellees' reply point does not mention any of the no evidence arguments which are expressly presented in the Association's summary judgment motion. (CR.189-194.) It does not indicate any intent to abandon or waive its no-evidence

18

arguments. (Id.) Indeed, the title of Appellees' reply motion—"Defendants' Reply to Plaintiff's Response to Defendants' Traditional *and No Evidence* Motion for Summary Judgment—reflects that Appellees' maintained their no-evidence arguments throughout the summary judgment proceedings. (CR.600.)

Additionally, Appellees' clarification statement was made *after* Elgohary's summary judgment response to Appellees' no-evidence motion had been filed. (CR.600.) The trial court set Appellees' traditional and no-evidence summary judgment motion for submission on October 7, 2013. (3-RR.13:23-15:10.) His deadline to present a scintilla of evidence supporting his claims was September 30, 2013. Tex. R. Civ. P. 166a. Elgohary failed to do so, and therefore the trial court's order granting Appellees' summary judgment on no-evidence grounds should be affirmed.

**2. Elgohary failed to establish that he needed additional time for discovery as required by Rule 166a, and therefore, the trial court did not abuse its discretion by granting the no evidence motion for summary judgment.**

A party arguing that it has not had adequate time to conduct discovery prior to a summary judgment deadline must file an affidavit explaining the need for further discovery or verified motion for continuance. Tex. R. Civ. P. 166a; *Doe v. Roman Catholic Archdiocese*, 362 S.W.3d 803, 809 (Tex.App.—Houston [14th Dist.] 2012, no pet.)(citing *Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 161 (Tex. 2004)). The affidavit must specifically explain the evidence needed and why the

19

continuance is necessary. *Doe*, 362 S.W.3d at 809. "[C]onclusory allegations are insufficient." *Id.*

A trial court's ruling on a motion for continuance under Rule 166a is reviewed for abuse of discretion. *Joe*, 145 S.W.3d at 161. A reviewing court may consider the following non-exclusive factors when determining whether a trial court's denial of a continuance constituted an abuse of discretion: (1) the length of time the case has been on file; (2) the materiality and the purpose of the discovery sought; and (3) the diligence exercised by the party seeking the continuance to obtain the discovery sought. *Id.*

In *Doe,* the court of appeals affirmed a trial court's denial of a motion to continue summary judgment proceedings despite the non-movant's sworn testimony. 362 S.W.3d at 812. The non-movant's affidavit recited the following: (1) the case had been on file less than four months; (2) additional time was needed to conduct full discovery; (3) the discovery would assist non-movant with proving that limitations had tolled; and (4) the particular documents and depositions that he needed. *Id.* The appellate court noted that the non-movant did not describe the relevant facts that he expected to discover or how the facts would help him defeat the summary judgment motion. *Id.* The court concluded that "[b]ecause Doe failed to explain *how* the additional discovery he sought was in any way material, the trial court did not abuse its discretion in denying the motion for continuance." *Id.*

20

05267.183 / 1649190.1

Similarly, in *Joe*, the Texas Supreme Court determined that the trial court did not abuse its discretion when it granted a no-evidence summary judgment that had been filed two months after the lawsuit was first initiated. *Joe*, 145 S.W.3d at 162. The non-movant's motion for continuance generally alleged that it needed additional discovery and depositions regarding elements of the movant's affirmative defense, but failed to set forth the materiality of the evidence to the summary judgment motion. *Id.* at 161. The court noted that "none of the discovery described could have raised a fact issue" and therefore the trial court did not abuse its discretion. *Id* at 162.

At the time that summary judgment was rendered, this lawsuit had been on file for nearly seven months. (See CR.9 and CR.606.) In response to the summary judgment motion, Elgohary did not file a verified motion for continuance explaining the need for a continuance. Rather, in his summary judgment response, he summarily argued that the case had not been on file long and that he had not received responses to his discovery requests. (CR.589-90.) Neither his response nor his summary judgment affidavit identified which of his 590 discovery requests were material to the summary judgment motions or explained how the information would raise a fact issue regarding his claims. (Id.) He did not identify individuals that he needed to depose or the information he expected to elicit from them. (Id.)

21

He also failed to explain why he could not present facts by affidavit to support his opposition as required by Rule 166a(g).

Additionally, Elgohary did not object to the trial court's re-setting of the summary judgment proceedings prior to its hearing on Appellees' discovery objections and motion for protection. (3-RR.13:16-16:6.) The trial court made clear that it was setting the summary judgment for submission prior to the oral hearing on the motion for protection regarding the Elgohary's discovery requests. (Id.) As he stood before the court, Elgohary did not suggest that his discovery issues needed to be resolved prior the court's consideration of the summary judgment motion.

The fact that a non-movant tried to obtain discovery prior to summary judgment is not enough to warrant a continuance. *Joe*, 145 S.W.3d at 162. Further, the time a case has been on file, alone, does not establish that a trial court abused its discretion by denying a continuance. *Doe,* 362 S.W.3d at 813. The record reflects that Elgohary failed to meet his burden Rule 166a to establish the need for a continuance, and therefore the trial court did not abuse its discretion by granting Appellees' no-evidence summary judgment.

**3. The trial court properly dismissed the claims when Elgohary failed to raise a fact issue in response to Appellees' no-evidence summary judgment motion.**

22

Even if this Court finds that Elgohary was authorized to bring representative claims under Tex. Bus. Org. Code §20.002, Elgohary's claims should still be dismissed based on his failure to meet his evidentiary burden in response to Appellees' no-evidence summary judgment motion. (Compare CR.189-194 to CR.594-599.) Elgohary presented only his own affidavit to support his summary judgment response which fails to provide any summary judgment evidence supporting his causes of action. (CR.579-581; CR.594-599.) As Elgohary points outs, affidavits based exclusively on conclusory legal or factual statements are not competent summary judgment evidence. *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997).

In his affidavit, Elgohary summarily claims that he reviewed some of the Association's records and found them to be insufficient. (CR.595-596.) His conclusory remarks regarding "missing minutes" and payments to unidentified board members, family members, and "selected neighbors" are unsupported by any specific examples or facts reflecting any such action. (Id.) Further, Elgohary does not controvert the facts stated in the affidavits of the individual Directors regarding the actions taken to ensure compliance with the by-laws, deed restrictions, local ordinances and statutes. (Id.) Accordingly, the summary judgment evidence fails to raise an issue of material fact regarding any alleged ultra vires act or cause of action. Indeed, neither his summary judgment response nor his pleading articulate

23

any specific act that should be construed as "ultra vires." (CR.109-13 and CR.579-92.)

### C. The Trial Court Properly Granted Appellees' Traditional Motion for Summary Judgment on Elgohary's Claims Against the Association, and its Directors.

A defendant can establish its right to a traditional summary judgment by negating at least on element of the plaintiff's claim. *Compton v. Calabria*, 811 S.W.2d 945, 949 (Tex. App.—Dallas 1991, no pet.). Once the movant has established a right to summary judgment, the burden shifts to the non-movant. *Long v. State Farm Fire & Casualty Co.*, 828 S.W.2d 125, 127 (Tex. App.—Houston [1st Dist.] 1992, no pet.).

Elgohary's argument regarding "unproven and unpled affirmative defenses" misconstrues Appellees' traditional summary judgment motion. Each of Elgohary's individual and derivative claims required a finding that the either the Association, the Directors, or RealManage acted in a manner that was not authorized by the applicable restrictive convenants, by-laws, and/or articles of incorporation (also referred to as "governing documents"). (CR.109-11.) For example, authorized actions cannot constitute a breach of contract or fiduciary duty. (Id.) Similarly, claims that property and funds had been converted or stolen from the Association fail if the deed restrictions authorize the Directors and/or RealManage to manage and/or utilize the funds at issue in the manner described.

24

(Id.) The following chart summarizes the elements negated by Appellees' proof that the Association, Directors, and RealManage had authority to engage in the actions at issue:

| Elgohary's Claim | Element Negated by Appellees' Summary Judgment Evidence of Authority |
|---|---|
| Breach of fiduciary duty | Cannot establish that there was a breach of fiduciary duty if acting within authority provided by governing documents. (CR.189) |
| Negligence | Cannot establish that there was a breach of duty of care if acting within authority provided by governing documents. (CR.190.) |
| Conversion | Cannot establish Appellees wrongfully exercised dominion or control over personal property if authorized to do so by the governing documents. (CR.190.) |
| Theft Liability Act | Cannot establish that Appellees unlawfully stole property and services if Appellees were authorized to use property and services under the governing documents. (CR.191.) |
| Conspiracy | Cannot establish that Appellees engaged in combined efforts for an unlawful purposes if their actions were authorized by the governing documents. (CR.191.) |
| Aiding and Abetting | Cannot establish that Appellees committed a tort or assisted in the commission of a tort if all actions were authorized by the governing documents. (CR.192.) |
| Piercing the Corporate Veil | Cannot establish that the Association was formed to commit fraud or evade legal obligations if the actions of the Association were authorized by the governing documents. (CR.192.) |
| Trespass | Cannot establish that Appellees' physically, intentionally, and voluntarily interfered with Elgohary's right to possess real property if alleged "interference" was authorized by governing documents. (CR.193.) |

25

05267.183 / 1649190.1

| Breach of Contract | Cannot establish a breach of any contract if the actions at issue were authorized by the alleged contract. (CR.194.) |
| --- | --- |

Accordingly, elements in each of Elgohary's claims are negated by the summary judgment evidence proving Appellees' authority to engage in the actions at issue as a matter of law. (CR.182-189.)

> **1. The summary judgment evidence establishes that the actions of the Association, the Directors and RealManage were authorized by: (a) the covenants, by-laws, and articles of incorporation; and (b) Texas Property Code §202.004.**

In Issues (B) and (D) of their summary judgment motion, Appellees argued that the actions of the Association, the Directors and RealManage were authorized, as a matter of law, by: (a) the Covenants, By-laws and Article of Incorporation and (b) Texas Property Code §202.004. (CR.182-189.) In summary, LOEN's Covenants, By-Laws and Articles of Incorporation a concern real property and give the Directors and the Association discretionary authority to take the actions at issue in this lawsuit. *Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 925 (Tex. App.—Houston [1st Dist.] 2010, no pet.);(CR.196-243.) Texas Property Code §202.004 creates statutory presumption that any of these actions taken pursuant to this discretionary authority are reasonable. This presumption can only be rebutted by a preponderance of evidence that the actions were "arbitrary, capricious, or discriminatory." *Id.* at 932-33.

05267.183 / 1649190.1

A court reviews restrictive covenants subject to the general rules of contract construction. *Uptegraph*, 312 S.W.3d at 925. The primary duty of the court is to ascertain the drafter's intent by examining the covenants as a whole in light of the circumstances when the covenant was made. *Id.* Although the parties in this case do not argue that the restrictive covenants at issue are ambiguous, the trial court decides whether an ambiguity exists. *Id.* A disagreement over the interpretation of a restrictive covenant does not render the covenant ambiguous. *Id.* at 926. Appellate courts review a lower court's interpretation of a restrictive covenant de novo. *Id.* at 925.

> **a. The uncontroverted summary judgment evidence establishes that the Association, the Directors, and RealManage were authorized to manage the use of the community access gates.**

In his petition, Elgohary complains that the Directors "fundamentally changed" the operation of the community's access gate "located on the northern portion" of LOEN's boundaries, and these fundamental changes constituted a trespass of his individual property rights and breach of contract. (CR.109-110.) In order to raise a fact issue regarding the issues of trespass and breach, however, Elgohary had the burden to establish that the actions were not authorized.

The following provisions are relate to the authority of the Association to control and manage the access gates in the community:

05267.183 / 1649190.1

## ARTICLE I
## GENERAL

Section 1. Definitions. The following words, when used in this Declaration, unless the context shall prohibit, shall have the following meanings:

b. "Association" shall mean and refer to The Lakes on Eldridge North Community Association, Inc., a non-profit corporation, **which will have the power, duty and responsibility of maintaining and administering the Common Areas**, Common Facilities, Common Personalty, Detention Areas and all Landscaping in the Common Areas, **and administering and enforcing these covenants, conditions and restrictions** and collecting and disbursing the assessments and charges hereinafter prescribed. (App.4.)
…

d. "Common Areas" shall mean and refer to areas of land, owne, leased or used by the Association, and/or easement areas for walls or fences, lakes/detention areas, **entryways, access or walkways,** recreational facilities, and other purposes benefitting the Members, including improvements and landscaping located thereon, for the common use, enjoyment and benefit of the Members of the Association. (App.4.)(Emphasis added).

Further Article VIII, Section 3(a) of the Covenants provides that it shall be

"[t]he right of the Association to prescribe rules and regulations for the use,

enjoyment, and maintenance of the Common Areas." (App.4.)

LOEN's By-laws vests the Directors with authority to manage "the

Association" stating specifically that "[t]he **property, business and affairs of the**

28

**Association shall be managed by the Board of Directors** who may exercise all such powers of the Association." (App.5)(emphasis added.)  Further:

> **[t]he Directors shall have all of the powers, authority and duties of the Association existing under the Act, the Restrictions and these By-Laws,** which shall be exercised exclusively by the Board, its agents, contractors or employees, subject only to approval by Members when such is specifically required by law, the Restrictions or these By-Laws." (App.5)(emphasis added.)
>
> LOEN's Articles of Incorporation state that LOEN is:
>
> a.    (ii)   to provide the management, maintenance, preservation and architectural control of Subdivision.
>
> b.    Generally:
>
>  (i)   to promote the health, **safety and welfare** of the owners of the Subdivision;
>
>  (ii)   to exercise all the powers and privileges and to perform all the duties and obligations of the Association as set forth in the Restrictions and the By-laws of the Association. (App.6.)

These provisions authorize the Association and the Directors to make decisions and changes regarding the management of the property, including but not limited to managing the entryways and access gates to the community.  (App.4; App.5; App.6.)

The affidavits of the individual Directors establish that they decided to restrict late night access to the community through the West Little York entry gate as a result of safety concerns and comments from members of the community.

29

(CR.246, 249, 254, 257, 268, 270; see e.g. App.7.) Prior to initiating the proposed changes, the Directors discussed whether restricting the gates would benefit the community, relieve tailgating issues at the gates, and protect and promote the welfare of the community members. (Id.) Additionally, the Directors surveyed the community and held town hall meetings on two occasions to determine the community amenability to the changes. (Id.) The Directors consulted with the Harris County Fire Marshal and the CyFair Volunteer Fire Department to ensure that emergency vehicles would still have access during non-operational hours. (Id.) The Directors also contacted a real estate expert to verify that the restricted access would not violate any city ordinances. (Id.)

Elgohary's summary judgment response and affidavit fail to controvert any of the facts established by the Directors' affidavits. (App.8.) He does not deny or dispute that the Association and its Directors investigated multiple issues related to the access gates including community needs and opinions, access for emergency vehicles, the violation of city ordinances, and other safety concerns. (Id.) His summary judgment response also fails to raise fact issue regarding any purported right or easement of unrestricted access through the gate at issue. (Id.) Additionally, Elgohary did not object to or dispute the content of the governing documents as reflected in Appellees' summary judgment evidence or claim that they were ambiguous. (CR.196-245.)

30

Further, Texas Property Code §202.004 creates a presumption that Appellees' actions are reasonable in the absence of any evidence that the Directors acted in a manner that was arbitrary, discriminatory and/or capricious. Appellees' summary judgment evidence affirms this presumption of reasonableness. (CR.245-271; see e.g. App.7.); alternatively, Elgohary's summary judgment evidence fails to present even a scintilla of evidence that their actions were arbitrary, discriminatory or capricious. (App.8.)

> **b. The uncontroverted summary judgment evidence establishes that Appellees' placement of signs in the community did not violate the restrictive covenants.**

Elgohary's petition also included factual allegations regarding the Association's placement of signs in the community. (CR.104.) It is unclear, however, which causes of action, if any, relate to these allegations. (CR.109-116.) To the extent that his complaints regarding sign placement form the basis of any cause of action, the summary judgment evidence establishes that the placement of the signs at issue were authorized as a matter of law.

The sign dispute arises from the interpretation of the following provision found in Article V of LOEN's Covenants:

> Section 1. <u>Covenants Applicable</u>. The following shall be applicable to any and all **<u>construction, improvement, alteration, or addition to the Lots</u>**.
>
> b. No sign, including political, advertisement, billboard or advertising structure of any kind shall be displayed, maintained or placed in the

31

public view on or from any part of the Property or on any Lot, except signs temporarily used by Declarant or any Owner on a Lot, of not more than six (6) square feet, advertising the Lot for sale or rent, or signs of architects and builders during the period of construction and sale of improvements on any Lot.

The unambiguous language limits the restriction on sign placement to signs related to "construction, improvement, alteration or addition to the Lots." Elgohary, however, interprets this provision to be a prohibition against all signs, anywhere in the subdivision. (CR.104-05; CR.107;6-RR.27.) As the trial court later noted during trial, such a reading would preclude the placement of safety signs surrounding the community pool. (6-RR.89:) Indeed, such a broad interpretation of narrowed language would even prohibit the placement of standard traffic and street signs.

The plain language of the sign provision at issue and those authorizing the Association to provide for the safety and welfare of LOEN authorized the Association to place the signs directing visitor traffic signs about which Elgohary complains. In light of this authority, Elgohary cannot maintain any of his claims, individual or derivative, against the Directors, the Association or RealManage based on the improper placement of signs. Accordingly, the trial court's order granting traditional summary judgment should be affirmed.

> **c. The uncontroverted summary judgment evidence establishes that the Association, the Directors, and RealManage managed and utilized LOEN funds and property reasonably and in good faith.**

05267.183 / 1649190.1

Appellees' summary judgment motion further challenged Elgohary's individual and derivative causes of action based on his allegations that the Directors and/or RealManage had mismanaged, misrepresented, misappropriated, stolen and/or defalcated LOEN funds. (CR.182-89.) In support of their argument that the management of LOEN's funds was authorized and performed in good faith, Appellees presented: (1) LOEN's Covenants granting them "absolute and final" discretion to manage LOEN funds; and (2) affidavit testimony establishing that funds were managed in accordance with the requirements of the Covenants and By-laws. (CR.201; CR.245-71; see e.g. App.7.)

Article III of LOEN's Covenants contains the following provisions authorizing the Directors to manage the collection and expenditure of LOEN's funds:

> Section 2. <u>Purpose of Assessments.</u>
>
> The assessments levied by the Association shall be used exclusively for the purpose of protecting and promoting the <u>comfort, collective mutual enjoyment, health and welfare of the Owners of the Property</u>…<u>The judgment of the Board of Directors of the Association in determining the functions to be performed by the Association</u>, in determining the amount of Regular Annual Assessments, Special Assessments and Special Member Assessments, and <u>in the expenditure of funds shall be final and conclusive so long as its judgment is exercised in good faith</u>. (App.4)(emphasis added.)
>
> Section 3. <u>Regular Annual Assessments.</u>

33

a. **Purpose**. …Regular annual Assessments may be used to finance in particular, **but not by way of limitation**, the following:

(1) Operation, maintenance, repair, replacement and improvement of the Common Areas…

….

(4) Paying the cost and fees of a manager or firm retained to carry out the duties of the Association or to manage the affairs and property of the Association;

…

(13) Payment of any expenses necessary for the Association or the Subdivision;

(14) Payment of and providing for access control;

(15) Carrying out the duties of the Board of Directors of the Association

The Directors testified that assessments were collected and used for the benefit of the community. (See e.g. 246-47, 249-50, 254-55, 257-58, 261, 264, 266, 270-71; App.7.) They averred that their management of the funds complied with the procedures set forth in the Covenant, By-laws and Articles of Incorporation. (Id.) They provided examples of expenditures being made to reward community members who had provided volunteer services for the benefit of the community. (See e.g. CR.270 at ¶7.) Further, each of the Directors averred that they did not receive compensation for their service on the Bboard. (CR.245, 248, 251, 253, 256, 260, 265, 267, 269.) The summary judgment evidence presented by Appellees,

34

therefore, established that Directors acted within the scope of their authority regarding the management of LOEN's funds.

In his response, Elgohary relied solely on his own hearsay testimony regarding alleged payments made with LOEN funds but did not raise a fact issue regarding the propriety of such payments. (App.8.) As discussed above, conclusory factual allegations such as these do not constitute competent summary judgment evidence. *Rizkallah v. Conner*, 952 S.W.2d at 587. Elgohary summarily stated that the Association had made payments to the Directors', their family members and "selected neighbors" without identifying the parties involved, amounts of payment, or date of payment. (Id. at 595.) In light of Elgohary's failure to provide any specific information regarding the alleged "misappropriation", it is impossible to determine whether such payment was a reimbursement for a valid LOEN expense or a gratuitous gift, the trial court properly determined that such conclusory allegations did not raise a fact issue. His evidence did not reflect that any alleged payments "inured to the benefit of a private individual" in violation of the Articles of Incorporation. (CR.595.) Further, Elgohary and did not controvert any of the statements made in the Directors' affidavits. (Id.)

Elgohary's argument ignores other provisions contained in the LOEN's By-laws and Articles of Incorporation. For example, the By-laws expressly authorize the directors "to be paid their expenses, if any, of attendance at each meeting of the

05267.183 / 1649190.1

Board of Directors." (CR.231.) The fact that a payment was made does not raise a fact issue as to whether the payment was unauthorized, improper, a theft, defalcation or misappropriation.

Additionally, Elgohary's affidavit states that "there were no financial controls in place" but fails to point to any Covenant, By-law or Article of Incorporation requiring "controls" beyond those set forth in the governing documents. (CR.595.) He presents no evidence that the Director's management of LOEN funds did not comply with the provisions set forth in the governing documents. Further, as discussed above, Elgohary never presented any evidence that the Association's actions were arbitrary, capricious or discriminatory, as required to rebut the presumption of reasonableness established by Texas Property Code §202.004.

Accordingly, even assuming the statements made in Elgohary's affidavit are true, they do not raise a fact issue sufficient to avoid summary judgment on his claims. The trial court therefore properly granted Appellees' traditional summary judgment on all of Elgohary's derivative and individual claims based on his allegations related to the management of LOEN funds.

> **2. The Directors' affidavits are based on personal knowledge and supported by specific facts and examples of actions taken by the Directors for the safety and general welfare of the community**.

36

"A summary judgment may be based on uncontroverted testimonial evidence of an interested witness…, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex. R. Civ. P. 166a. An appellate court reviews a trial court's decision to consider or exclude summary judgment evidence for an abuse of discretion. *Rockwall Commons Assocs. v. MRC Mortg. Grantor Trust I, 331 S.W.3d 500, 512 (Tex.App—El Paso, 2010)*

Rather than controvert the facts established by the Directors's affidavits, Elgohary asks this Court to disregard the affidavits on the grounds that they are conclusory. "A conclusory statement is one that does not provide the underlying facts to support the conclusion and, therefore, is not proper summary-judgment proof." *Id.* Conclusory statements are not susceptible to being readily controverted. *Id.*

Each of the affidavits at issue are supported by specific factual statements and examples of actions taken by the Directors to "promote the health, safety and welfare of the LOEN community." (CR.247-271; see e.g. App.7.) For example, with regard to the statements:

> "…all of the discussions, procedures, and investigations regarding the decision of restricting the access were done in good faith and in the best interest of the LOEN members;" (See e.g. CR.246 at ¶6.)
>
> and

37

"…the Board, followed the proper procedure outlined in the dedicatory instruments in making these decisions;"

the Directors stated that they discussed and voted on the propositions. (See e.g. App.7 at ¶4.) They surveyed the community for feedback to determine whether members wanted restricted access. (App.7 at ¶5.) The Directors also held town hall meetings to allow members to voice their opinions regarding these issues. (Id.) The Directors consulted with two fire departments and a real estate expert to ensure they were not violating city ordinances or encumbering emergency vehicles. (App.7 at ¶6.)

Additionally, with regard to the statements that,

"…the expenditures of the LOEN funds were made in good faith in order to benefit the community,"

the affidavits included specific examples of "good faith" expenditures, such as the purchase and donation of gift cards to members providing volunteer services to the community. (See e.g. App.7 at ¶8.) The affidavits further state less than 2% of the annual assessment was spent on social or volunteer awards. (Id.) The Directors further testified that the board operated the Association and community affairs below the budget and have been able to fund an operating reserve and capital replacement reserve without reducing services to the community. (App.7 at ¶10.)

Further, the statement that "as officer of LOEN, I am unaware of any misrepresentations made to the IRS concerning LOEN" is not conclusory on its

38

face. It would be impossible to provide additional details or examples of something that did not happen. This statement, however, could have been controverted with evidence of a specific misrepresentation if such evidence had existed.

These specific factual statements and examples support the excerpted statements Elgohary addresses in his brief. Each of the factual statements could have been controverted by evidence or affidavits indicating that town hall meetings had not taken place or that the Directors had been over-budget and had reduced services. Elgohary, however, failed to present any such controverting evidence in his summary judgment response. Accordingly, the trial court properly declined to exclude the affidavits from summary judgment evidence.

### 3. Elgohary's Requests for Sanctions Are Not Independent Causes of Action, and Therefore the Trial Court's Summary Judgment Disposed of All of His Claims.

"Texas courts have treated proceedings for sanctions as motions, not as independent causes of action." *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 312 (Tex. 2000); see also *Mantri v. Bergman*, 153 S.W.3d 715,717-18 (Tex.App.—Dallas 2005, pet. denied). For this reason, "a pending motion for sanction does not make interlocutory an otherwise-final judgment." *Mantri*, 153 S.W.3d at 717-18. Further, TEXAS CIVIL PRACTICE & REMEDIES CODE §10.002 specifically provides that the trial court may enter a sanctions order "on its own

05267.183 / 1649190.1

initiative." A trial court's ruling on a motion for sanctions is reviewed for abuse of discretion. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009).

In his brief, Elgohary asks this Court to construe his motion for sanctions as causes of action against the Association's counsel, which required disposition by summary judgment and notice under Rule 166a. It is well-established that a request for sanctions is not an independent cause of action, but rather a procedural device. Elgohary has failed to cite to any case indicating that a party is entitled to summary judgment or any notice prior a court's disposition of its request for sanctions. Accordingly, the trial court had full authority to sign its order denying sanctions on January 27, 2014 after disposing of the summary judgment motion. (CR.818).

Further, the trial court's October 12, 2013 summary judgment order dismissing "Plaintiff's derivative and individual claims" with prejudice is consistent with content of Appellees' summary judgment motion. (App.1.) Appellees' do not dispute that Rule 166a requires that a summary judgment motion must state the grounds for judgment. Appellees, however, were not required to address Elgohary's sanctions allegations in order to obtain a dismissal of all of his claims, because sanctions actions do not constitute claims. *Lane Bank*, 10 S.W.3d at 312.

05267.183 / 1649190.1

Elgohary's argument is further belied by the fact that Neil McLaurin and Walter Spears were never served with citation, joined to the lawsuit, or appeared as parties to the lawsuit. Elgohary cannot complain that the summary judgment is not a final disposal of all claims and parties when he failed to serve and join the purported "parties" and properly join them.

For these reasons, this Court should affirm the summary judgment of the trial court and overrule the Elgohary's argument in Issue Two(II).

### 4. The trial court properly declined to write new law regarding derivative claims against non-profit organizations and dismissed Elgohary's derivative claims against the Directors and RealManage.

In its summary judgment motion, Appellees argued that the Texas Business Organizations Code does not authorize the derivative actions against non-profit organizations as a matter of law. (CR.180-182.) The argument raises a statutory construction issue regarding the interpretation Elgohary's pleadings under the Texas Business Organizations Code rather than an issue of evidence.

Statutory construction issues require the court to "ascertain the 'legislature's intent." *McNeil v. Time Ins. Co.*, 205 F.3d 179, 183 (5th Cir. 2000, cert. denied)(citing *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994)); *see also* TEX. GOV'T CODE § 312.005. To discern legislative intent, courts should consider the entire act, its nature, its object and the consequences that

follow from its construction. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex. 1999).

In *Flores v. Star Cab Coop. Ass'n*, the court determined that the Texas Business Organization Code did not authorize derivative suits against non-profit corporations. 2008 Tex. App. LEXIS 6582, 2008 WL 3980762 *19-22 (Tex.App.—Amarillo 2008, pet. denied). The court pointed out that the Texas Non-Profit Corporation Act "does not contain a provision like the Business Corporation Act article 5.14 authorizing a derivative action" and therefore declined the invitation to "fashion a remedy" not provided by the express terms of the statute. *Id.*

Elgohary's claims, in effect, constitute derivative claims on behalf of the Association against the Directors and RealManage. (CR.99-117.) In his claims for damages, he seeks to recover from the Association and on behalf of the Association/ (CR.113.) Such claims sound in a derivative capacity akin to the claims in *Flores*, and accordingly should be dismissed.

### 5. The trial court properly granted summary judgment in favor of the Directors based on their immunity under the Volunteer Protection Act and Texas Business Organizations Code §22.235.

The Directors' summary judgment evidence further establishes that they are volunteers, and therefore fall within the purview of immunity provided by the Volunteer Protection Act and Texas Business Organizations Code §22.235.

42

(CR.245, 248, 251, 253, 256, 260, 263, 267, and 269.) The Volunteer Protection Act states:

> [N]o volunteer of a nonprofit organization or governmental entity shall be liable for harm caused by an act or omission of the volunteer on behalf of the organization or entity if—
>
> (1) the volunteer was acting within the scope of the volunteer's responsibilities in the nonprofit organization or governmental entity at the time of the act or omission;
> …
>
> (3)   the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer.
> ….

42 U.S.C.S. § 14503.

Additionally, Chapter 22 of the Texas Business Organizations Code sets forth the elements for an officer's liability to a non-profit corporation:

> (a)   An officer is not liable to the corporation or any other person for an action taken or omission made by the officer in the person's capacity as an officer unless the officer's conduct was not exercised:
>
> > (1) in good faith;
> > (2) with ordinary care; and
> > (3) in a manner the officer reasonably believes to be in the best interest     of the corporation.

05267.183 / 1649190.1

Tex. Business Organizations Code § 22.235. "Ordinary care" is defined as "the care that an ordinarily prudent person in a similar position would exercise under similar circumstances." Tex. Business Organizations Code § 22.001.

Each Director was acting within the course and scope of their duties as volunteers when the decisions of which Elgohary complains were made. (CR.245-271; App. 7.) Further, each acted in good faith in making the decisions and taking the action which are the basis of this lawsuit. (Id.) These actions were carefully considered and evaluated by the Directors, as the affidavits clearly set forth. (Id.) Each Director used ordinary care in their role as officer in making the decisions for the Association, and each did so with the reasonable belief that the decisions and actions for the LOEN community were done in the best interest of the Association. (Id.) Therefore, the summary judgment evidence established that each individual Director was entitled to statutory immunity under (1) the federal Volunteer Protection Act, and (2) Texas Business Organizations Code.

Appellees do not dispute that their answer did not reference the Volunteer Protection Act and/or the Texas Business Organizations Code. Texas Rule of Civil Procedure 94 does not expressly set forth immunity under these statutes as an affirmative defense, and therefore it was not required that their answer include them. Tex. R. Civ. P. 94. Additionally, the burden was on Elgohary to prove that summary judgment based on the issue of immunity caused surprise or prejudice.

05267.183 / 1649190.1

Tex. R. Civ. P. 66. The record does not reflect that Elgohary presented any such evidence, and therefore summary judgment based on the Directors' immunity should be affirmed.

## II. THE TRIAL COURT PROPERLY RENDERED JUDGMENT ON LOEN'S DECLARATORY JUDGMENT CLAIMS.

Declaratory judgments are reviewed under the same standards as all other judgments. Tex. Civ. Prac. & Rem. Code § 37.010. When the trial court enters a declaratory judgment after a bench trial, an appellate court applies a sufficiency of the evidence review to the trial court's factual findings and reviews its conclusions of law de novo. *Am. First Nat'l Bank v. Jordan-Lewis Dev., L.P.*, No. 01-09-00990-CV 2011 Tex. App. LEXIS 5347, at \*10 (Tex. App—Houston [1st Dist.] July 14, 2011, no pet.) The trial court's determination must be upheld if it can be sustained upon any legal theory supported by the evidence. *Id.*

In evaluating the factual sufficiency of the evidence, the court must consider evidence that favors the finding if a reasonable fact-finder could consider it, and must disregard evidence contrary to the challenged finding unless a reasonable fact-finder could not disregard it. See *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A legal insufficiency, or "no evidence," point may not be sustained unless the record demonstrates (1) a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence

45

offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. *Id*.

The trial court's conclusions of law are review de novo and will be upheld if the judgment can be sustained on any legal theory supported by the evidence. *Noble Mortg. & Invs. LLC v. D&M Vision Invs.*, LLC, 340 S.W.3d 65, 74-75 (Tex. App.—Houston [1st Dist.] 2011, no pet.) The trial court's conclusions of law cannot be challenged for lack of factual sufficiency, but may be reviewed as to the legal conclusions drawn from the facts to determine their correctness. *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex. App. Houston 1st Dist. 2007, no pet.).

The Association was granted two declaratory judgments relating to its pre-suit interpretation of provisions of its governing documents disputed by Elgohary:

1.      that the Association is permitted to regulate the use of the West Little York entry/exit; and

2.      that the Association is not prohibited from placing signs on Association property, so long as said signs do not relate to the construction, improvement, alteration, or addition to Lots within the Subdivision. (App.2.)

Elgohary fails to present any argument on appeal suggesting that the evidence is legally or factually insufficient to support the two declarations made in the judgment. Accordingly, his Issue 3 should be denied and the trial court's judgment affirmed.

46

**A.** **The Trial Court Did Not Err in Refusing to Abate the Association's Counterclaims in order to Join Every LOEN Property Owner.**

Elgohary sought to abate the Association's counterclaim for declaratory judgments in order to join all property owners in LOEN and the City of Houston. (CR.42-43; CR.611-16.) The Association, however, only sought declarations confirming their pre-suit position regarding its authority to regulate its access gates and place signs in the community under LOEN's existing deed restrictions. (CR.155-61.) They did not seek to adjudicate new rights or new restrictions with respect to non-party property owners. (Id.) Elgohary failed to establish his joinder burden in the trial court because Texas law makes clear that joinder of additional parties was not required to adjudicate the Association's counterclaims.

Trial courts have "broad discretion" regarding the issue of joinder. *Royal Petroleum Corp. v. Dennis*, 160 Tex. 392, 332 S.W.2d 313, 398 (Tex. 1960). The party seeking joinder bears the burden to prove that the joinder requirements are met under Texas Rule of Civil Procedure 39 which states:

> A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

47

*See also Epernay Cmty. Ass'n v. Shaar*, 349 S.W.3d 738, 746-47 (Tex.App.—Houston [14th Dist.] 2011, no pet.); *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162 (Tex. 2004). Additionally, Tex. Civ. Prac. & Rem. Code § 37.006 provides that a declaration does not prejudice the rights of a person not a party to the proceeding.

Texas courts have repeatedly held that declaratory judgment claims regarding the interpretation of deed restriction do not require the joinder of all residents in a community. In *Caldwell v. Callender Lake Property Owners Improvement Association,* the court held that all property owners in a community did not need to be joined to a homeowner's association's declaratory judgment action. 888 S.W.2d 903, 907 (Tex.App.—Texarkana 1994, no pet.) The court determined that since no new rights were adjudicated with respect to the non-joining property owners and the declaratory judgment only confirmed the validity of the association's pre-suit position, the rights of the non-joining owners were not infringed upon or affected. *Id.*

Similarly, in *Epernay Community Association,* the homeowners' association for a neighboring subdivision sought to collect fees from two homeowners relating to the maintenance of certain recreational areas used by members of both associations. *Id.* The homeowners filed a lawsuit seeking relief relating only to them, not any other owners, even though the fees addressed in the case were

48

sought from *all* owners in their subdivision. *Id.* The defendant association filed a counterclaim seeking a declaratory judgment regarding the validity of the agreement on which the fees were based, and requested a joinder of all property owners. *Id.* The trial court's denial of the homeowner's association's plea in abatement and request for joinder was affirmed. *Id.* In its analysis, the appellate court held that the homeowner's association "**did not provide the trial court with any evidence as to the identity, number, or interests of these other homeowners**" and therefore the trial court did not err by impliedly finding that [the association] had failed to show that Rule 39(a) required the joinder of the other homeowners in Subdivision Two." *Id.*(emphasis added).

In this case, Elgohary did not provide the trial court with any evidence as to the identity, number and interests of the other homeowners regarding the declarations sought by the Association. Elgohary has failed to demonstrate how other owners in the LOEN Subdivision are necessary parties to the Association's counterclaim under this standard.  Elgohary has failed to provide any evidence as to:

a.  How complete relief could not be accorded among the existing parties to the Association's counterclaim;

b.  How any other persons claim an interest relating to the subject of the action against Elgohary;

49

c. How the Court entering a judgment against Elgohary in the counterclaim would impair or impede the ability of any other owner to protect his or her interest; or

d. How the Court entering a judgment against Elgohary in this case would leave Elgohary subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations.

The Association presented this point to the trial court in its Objections & Response to Counter-Defendant Victor S. Elgohary's Plea in Abatement and Special Exceptions, filed December 6, 2013 (CR Supp 6-14), but Elgohary still failed to provide any evidence regarding the above-referenced requirements at the December 9, 2013 hearing on same. (RR4 4-9.) Throughout the case, the Association sought only to confirm the validity of its pre-suit position. (CR.155-161.) The Association did not seek to adjudicate any new rights with respect to non-joining property owners. (Id.) Specifically, the Association sought two declaratory judgments against Elgohary in order to validate its pre-suit position as to two issues under the Association's governing documents which were disputed by Elgohary alone. (CR 156-161.)

Additionally, Elgohary presented no evidence at the two hearings that were held on June 10, 2013 and December 9, 2013, on his special exceptions and plea in abatement. (2-RR.17-23; 4-RR.4-9.) Other than vague references that "a determination by this Court on those issues... affects all Lakes on Eldridge North lot owners..." (CR 613) and "all necessary 1,081 Lakes on Eldridge North lot

50

owners..." (CR 614), the record contains no information or evidence as to what specific claims or interests of said owners would be affected by the trial court's granting of the declarations sought by the Association against Elgohary. (See generally 2-RR and 4-RR.).

Elgohary mistakenly cites *Dahl v. Hartman* in support of his argument that the trial court should have abated the Association's counterclaim and required joinder of additional owners. The *Epernay* court made the following distinction with regard to *Dahl v. Hartman*:

> Association One relies upon *Dahl v. Hartman*. See 14 S.W.3d 434, 435-36 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). In *Dahl*, the plaintiff sought declarations that the property owners' association for a subdivision was not validly formed and that the [sic] all of the subdivision's deed restrictions had not been validly extended beyond their original expiration date. *See id.* This relief was much broader than the relief sought by the Shaars when the trial court denied Association One's plea in abatement. *See id.* In addition, in *Dahl*, the trial court granted the defendant's plea in abatement and ordered the plaintiff to serve all property owners in the subdivision. *See id*. **The trial court in Dahl found that the plaintiff sought a declaration that the deed restrictions were invalid and that this declaration would affect the interests of all property owners in the subdivision.** **See id.** *In the case under review, the trial court made no such rulings or findings. The Dahl case is not on point.* [emphasis added]

*Epernay,* 349 S.W.3d at 349, n. 6.

51

This logic applies in the instant case. The trial court made no rulings or findings that the declarations sought by the Association would affect the interests of all property owners in Elgohary's subdivision. (CR.617.) By denying Elgohary's special exceptions and plea to the jurisdiction, the trial court actually found the opposite to be the case. As a result, the *Dahl* case is not on point, and the trial court did not abuse its discretion in denying Elgohary's request for abatement and joinder.

The declarations granted in favor of the Association by the Trial Court will have no substantive effect on the rights of other owners of lots in Elgohary's subdivision—as the net effect of same is simply to validate the Association's pres-suit position and interpretation of these 2 issues—that the Association already had authority to regulate the West Little York gate and that signs were already permissible under certain circumstances within the subdivision. No new rights were created or destroyed by the declarations granted by the trial court, and no rights were expanded or curtailed by the declarations. The result of the court's judgment was to quiet Elgohary's and *only* Elgohary's disputes as to the Association's pre-suit position.

As a result, the trial court's judgment in the instant case has no preclusive effect on the ability of other property owners within the LOEN Subdivision to seek an adjudication of any of the issues addressed in the Association's counterclaim.

52

The trial court properly found that it had sufficient jurisdiction over the existing parties to the case and that joinder of additional parties was unnecessary when it overruled both of Elgohary's special exceptions and denied his plea in abatement after hearings on same. (CR.617.)

**B.    The Trial Court Properly Determined That The Association's Governing Documents Only Prohibit the Placement of Signs in the Subdivision under Certain Circumstances.**

The trial court's interpretation of the Association's Covenants must be upheld if the same can be sustained upon any legal theory supported by the evidence. *Noble Mortg. & Invs. LLC*, 340 S.W.3d at 74-75. One of the declarations issued by the trial court is as follows:

> The Association is not prohibited from placing signs on
> Association property, so long as said signs do not relate
> to the construction, improvement, alteration, or addition
> to Lots within the Subdivision. (CR.939.)

Said language tracks the plain wording of the Covenant and comports with the trial court's reading and interpretation of same.

As discussed above in Section I(B)(1)(b) of this Brief, the Article V of the Association's Covenants provide the following:

> Section 1.  Covenants Applicable.  The following shall be applicable
> to any and all **construction, improvement, alteration, or addition to
> the Lots**.
>
> b. No sign, including political, advertisement, billboard or advertising
> structure of any kind shall be displayed, maintained or placed in the
> public view on or from any part of the Property or on any Lot, except

53

signs temporarily used by Declarant or any Owner on a Lot, of not more than six (6) square feet, advertising the Lot for sale or rent, or signs of architects and builders during the period of construction and sale of improvements on any Lot. (CR.209)(emphasis added)

The covenant prohibiting the display, maintenance or placement of signs in the subdivision is specifically qualified and restricted by its heading, which clarifies that same is "applicable to any and all construction, improvement, alteration, or addition to the Lots." (CR 290.)

So, for instance, if an owner wanted to place a sign on her lot or on a common area esplanade, advertising that "Joe's Construction" was performing an alteration to her pool, said sign would be prohibited as it clearly would constitute a sign placed in public view in the subdivision relating to the construction or alteration of a lot. However, if the Association were to place a sign at the subdivision's common area pool, instructing owners not to leave children unattended while swimming, it would not be prohibited, as such a sign does not relate in any way to the construction, improvement, alteration of or addition to any owner's lot.

Elgohary has contrived an interpretation of the sign provisions of the Covenant that is unsupported by the language therein, arguing that it prohibits the placement of *any* sign by *any* party *anywhere* in the entire subdivision—whether on private lots or on common areas—except for signs for the sale of a lot. Elgohary testified as follows at trial:

54

Q. (BY MR. MCLAURIN, IV)[Association's counsel] So, is it your contention that the association's governing documents prohibit the placement of signs by the association in the subdivision?

A. [Elgohary] Yes.

Q. Okay. All signs?

A. It says: Except for certain permitted signs for the sale of your -- of individual lots. (6-RR.27).

…

Q. Okay. So -- so there shouldn't be any signs in the subdivision whatsoever; is that your testimony?

A. That is -- that is -- that is how this written. Yes, sir.

Q. Okay. So, no signs at the pool alerting kids not to run at the pool?

A. Correct.

Q. No signs telling people when they can use the tennis court?

A. That is what is written. (Id. at 32-33.)

The trial court found that the provisions of the Covenant were unambiguous:

THE COURT: Okay. I've reviewed the declarations and do not seem unclear to me at all. (Id. at 91.)

The trial court also agreed with the Association's interpretation and stated the following at trial:

55

THE COURT: Your position has been that they can't put up any signs, including signs at the swimming pool that say: No running at the pool, right?

MR. ELGOHARY: As a strict interpretation, that's correct. (6-RR.89.)

…

THE COURT: Article VIII relates to common properties. And Section 3(a) says that, "The Association has the right to prescribe rules and regulations for the use, enjoyments, and maintenance of the Common Areas." As well as, "The Association has the right to establish reasonable rules and regulations governing the Members' use and enjoyment of the Common Areas, and the right of the Association to charge reasonable admission and other fees for the use of recreational facilities which are part of the Common Areas." All of that.

And -- and I'm -- I'm not finding -- maybe it's under IX 3: Enforcement. "Enforcement of the covenants, conditions, restrictions shall be by any proceeding at law or in equity," which seems to me to give the board of directors the ability to put people on notice of various rules related to access, as well as other issues related to the common area via such things as signs telling people: These are the rules. (6-RR.92-93.)

…

THE COURT:  Also, the ordered, adjudged and decreed, I am going to sign that the association is not prohibited from placing signs on association property, meaning common area, so long as the signs are not related to the construction, improvement, alteration, or addition to the lots within the subdivision. (6.RR.93-94.)

05267.183 / 1649190.1

The trial court held that the Article V, Section 1(b) regarding signs was unambiguous and that its terms authorize the Association to place signs in the subdivision. The trial court's interpretation of the covenant was clearly set forth on the record. As this Court has previously held, the trial court's ruling must be upheld if the judgment can be sustained on any legal theory supported by the evidence. Therefore the declaration relating to the placement of signs must be upheld.

**C.  The Association's Request for a Declaratory Judgment Regarding the Regulation of the West Little York Entry/Exit Was a Justiciable Controversy and the Court Did Not Err in Issuing a Declaratory Judgment against Elgohary Regarding Same.**

The second declaration issued by the trial court in this case is as follows:

> The Association is permitted to regulate the use of the West Little York entry/exit. (CR 939.)

Following is what the Association asked for in its live pleading as of the time of trial with regard to the regulation of its West Little York gate:

> The Subdivision has two primary entry/exit points: one on Tanner Road ("Tanner" or "Main") which is manned by personnel, and one on West Little York ("WLY" or "Back"), which is unmanned. ***The Association–pursuant to authority contained in its dedicatory instruments to regulate common areas–has restricted the use of the WLY entry/exit between the hours of 11 p.m. and 5 a.m., and posted signs related to said regulation. It has done so after seeking the input of the owners of property in the Subdivision and for the security of all residents in the Subdivision.*** The Main entrance is approximately 1.2 miles from Elgohary's residence. The

57

05267.183 / 1649190.1

WLY entrance is approximately 0.3 miles from Elgohary's residence. ***Elgohary desires access to the WLY entry/exit at all times and to be able to do so on a bicycle in addition to a motor vehicle. Elgohary does not agree with the Association's decision and believes that the Association is prohibited from regulating this common area as described herein.*** Although Elgohary has brought suit against the Association alleging a trespass to his alleged easement and breach of contract, the relief the Association seeks in this counterclaim is greater in scope and concerns the underlying disagreement between the parties as to the interpretation of the Association's dedicatory instruments. In the event Elgohary were to dismiss his claims or to fail to succeed on his limited causes of action against the Association, the Association would achieve no finality or resolution regarding its disagreement with Elgohary as to its interpretation of its own dedicatory instruments. [emphasis added] (CR 156-157.)

Elgohary specifically complained of the Association's regulating of the gate in his pleadings:

Over the past couple of years, LOEN's board of directors has fundamentally changed the operation and use of the restricted access gate located on the northern portion of Lakes on Eldridge North's boundaries. It has not only enacted new limited times of operation and reduced the vehicle size restrictions, but it has made resident access into or out of the northern access point of the subdivision impossible unless utilizing a motor vehicle. (CR 107.)

Thus the issue presented to the trial court by the Association—the real and substantial controversy between the parties—was whether or not the Association was and is authorized to regulate its gate pursuant to its Covenant. Elgohary is the

58

only owner in the subdivision who has argued that the Association is not authorized to regulate the gate in such a manner.

In his brief Elgohary ignores the specifics of the Association's counterclaim and instead erroneously and improperly addresses the claims he allegedly made against the Association in *his* own dismissed lawsuit. Although he now claims that there was no justiciable controversy between the parties as to the regulation of the gate, Elgohary never pleaded the same in the form of an answer or affirmative defense (CR.608-610)—only as an argument at trial when it appeared that the Court was inclined to grant the declaration against him.

Elgohary ignores the pleadings and trial transcript and attempts to re-frame the scope and specifics of the Association's counterclaim. He describes for this Court the controversy alleged in *his* lawsuit against the Association, but those allegations are irrelevant to the claims brought by the Association against Elgohary. He essentially argues that the Association just doesn't understand the actual argument between the parties—that *his* cause of action against the Association was about fire codes, barricades, breach of contract and alleged trespasses to easement rights. Elgohary states "[b]ut the substantive controversy between Elgohary and the Association is in barricading of Enclave Vista Lane…" (Appellant's Brief at 53). That may very well be accurate as to Elgohary's claims *against the Association*, but it has nothing to do with the declaration sought by the

59

Association against Elgohary. The Association has the right to define the scope of its own lawsuit, despite Elgohary's claims to the contrary. *Cf. Denso Corp. v. Hall,* 396 S.W.3d 681, 688 (Tex. App—Houston [14th Dist.] 2013, no pet.)

This Court has clearly set out the standard for a justiciable controversy in a declaratory judgment action in *Chapman v. Marathon Mfg. Co.*, 590 S.W.2d 549, 552 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ):

> To constitute a justiciable controversy for declaratory judgment purposes, there must be a real and substantial, rather than a theoretical, controversy involving a genuine conflict of tangible interests. *Sub-Surface Construction Company v. Bryant-Curington, Inc.*, *supra*; *Board of Water Engineers v. City of San Antonio*, 155 Tex. 111, 283 S.W.2d 722 (1955). Once this is established it must appear that the matter in controversy is within the general jurisdiction of the court. *Great American Insurance Company v. Murray*, 437 S.W.2d 264 (Tex. 1969). The evidence supports the district court's conclusion that it had subject matter jurisdiction of the declaratory judgment action.

The real and substantial controversy between Elgohary and the Association, as described in the Association's pleadings, was directly addressed by the trial court at trial:

> THE COURT: -- that's why we're here today is to resolve whether or not your interpretation of the rules of the declaration is correct or not.
>
> MR. ELGOHARY: I just –
>
> THE COURT: And if you had not taken that position, we wouldn't be here today, would we?

05267.183 / 1649190.1

MR. ELGOHARY: Well, there were two. We're also taking the position on the gates.

THE COURT: Okay. If you hadn't taken those positions, we wouldn't be here today, would we?

MR. ELGOHARY: Well, if nobody had filed the lawsuit, that's correct.

THE COURT: And you're the only one that filed the lawsuit, right?

MR. ELGOHARY: That's correct. (6-RR.89-90).

Clearly the trial court took the view that a justiciable controversy existed between the parties with regard to the claim asserted by the Association in its counterclaim against Elgohary.

The trial court first found that the provisions of the Covenants were unambiguous:

THE COURT: Okay. I've reviewed the declarations and do not seem unclear to me at all. (6-RR.91.)

The trial court then clearly delineated for the parties its reading of the Covenant as a whole and its agreement with the Association that the Association is within its rights to regulate the West Little York entry/exit gate:

Article VIII relates to common properties. And Section 3(a) says that, "The Association has the right to prescribe rules and regulations for the use, enjoyments, and maintenance of the Common Areas." As well as, "The Association has the right to establish reasonable rules and regulations governing the Members' use and enjoyment

61

of the Common Areas, and the right of the Association to charge reasonable admission and other fees for the use of recreational facilities which are part of the Common Areas." All of that.

And -- and I'm -- I'm not finding -- maybe it's under IX 3: Enforcement. "Enforcement of the covenants, conditions, restrictions shall be by any proceeding at law or in equity," which seems to me to give the board of directors the ability to put people on notice of various rules related to access, as well as other issues related to the common area via such things as signs telling people: These are the rules.

***Given all of that, I find that it is proper to issue a declaratory judgment in this case.*** That the association permitted to regulate the use, as I said under the access portions of the designations, to regulate the use of the West Little York entry and exit. Those are issues that if they -- if you don't like the way it's being dealt with, deal with the board. [emphasis added] (RR6 92-92.)

In his brief and point of error, Elgohary tries to re-frame the scope of the Association's claim against him by saying there was no controversy between him and the Association with regard the Association regulating the gate. The record above clearly shows otherwise. As this Court has previously held, the trial court's determination must be upheld if it can be sustained upon any legal theory supported by the evidence. The trial court explicitly stated its logic regarding the gate declaration and the evidence supporting it. As a result, the declaratory judgment must be upheld.

## III. THE TRIAL COURT PROPERLY GRANTED APPELLEES' MOTION FOR PROTECTION.

62

It is well-established that a party cannot use overly broad discovery requests as a fishing expedition for evidence. *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995). The Texas Rules of Civil Procedure require that discovery requests be narrowly tailored to lead to the discovery of admissible evidence, and it is on the drafting party to tailor the request. *Id.* A trial court's ruling on a motion for protection or discovery order is reviewed for an abuse of discretion. *Id.*

After initiating this lawsuit, Elgohary served 590 separate discovery request on each of the Appellees. (CR.283-509.) Additionally, he served multiple deposition notices on certain Directors and Christi Keller after his claims against them had been dismissed and they were no longer parties to the case. (CR.665-678.) In response to the voluminous requests, the Association, the Directors, and RealManage filed global objections to the discovery and motions for protection (CR.272-531; CR.633-661; CR.679-707).

An oral hearing on the motions for protection and motion to quash the deposition was held on January 27, 2014. (5-RR.) At the time of the hearing, the only causes of action remaining at issue were the Association's declaratory judgment claims seeking an interpretation of LOEN's Covenants. (5-RR.8:23-15:18.) As the Association pointed out, the only issue for the trial court to review and interpret was the validity of the language of the deed restrictions. (Id.) It did not need to review evidence related to the application of deed restriction to specific

63

activities in light of the dismissal of Elgohary's claims. (Id.) Accordingly, the trial court properly determined that Elgohary's discovery requests and requests for depositions were not reasonably tailored to lead to the discovery of admissible evidence and therefore unnecessary in the pending lawsuit. (App.3.) Elgohary's Issue Four should therefore be rejected and the order granting protection and final judgment affirmed.

## IV. THE TRIAL COURT PROPERLY AWARDED THE ASSOCIATION ITS ATTORNEY'S FEES, BUT THIS COURT SHOULD REFORM THE AWARD TO REFLECT THE FEES ACTUALLY INCURRED.

Texas courts review an award of attorney's fees pursuant to TEX. CIV. PRAC. & REM. CODE § 37.009 under an abuse of discretion standard. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). "A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to guiding principles." *Petroleum Analyzer Co. LP v. Olstowski*, 2010 Tex. App. LEXIS 5581 at *47-48 (Tex.App.—Houston [1st Dist.] July 15, 2010, no pet.). Under the abuse of discretion standard, evidence should be viewed in the light most favorable to the trial court's ruling and the reviewing court should indulge every presumption in its favor. *Aquaduct, L.L.C. v. McElhenie*, 116 S.W.3d 438, 444 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Since no findings of fact or conclusions of law were requested by Elgohary or made by the trial court, this Court must uphold judgment if it can be sustained

05267.183 / 1649190.1

upon any legal theory supported by the evidence, and it is implied that the Trial Court made all the necessary findings to support its judgment. *Goodyear Tire & Rubber Co. v. Jefferson Constr. Co.*, 565 S.W.2d 916 (Tex. 1978).

### A. Elgohary Failed to Preserve This Issue for Appeal.

In *Nelson v. Big Woods Springs Improvement Ass'n,*, the attorney for the prevailing association only testified as to the rates he and his legal assistant billed for work performed on the case, the number of hours worked on the case and the amount requested in fees. 322 S.W.3d 678, 684 (Tex.App.—Texarkana 2010, pet. denied). The court noted that the association's opponent made no objection or argument on the issue of fees until the appeal, and found that the issue was not preserved for purposes of appeal under TEX. R. APPL. P. 33.1(a)(1). *Id.* at 684-685.

In the instant case, Elgohary presented no testimony or evidence on the issue of attorney's fees. (6-RR.85.) Elgohary made no objections or argument as to the attorney's fees at trial, other than a statement in closing argument. (6-RR.90-91.) Closing statements do not constitute evidence. *Tovar v. Mazza*, 1999 Tex. App. LEXIS 2222, 1999 WL 174064 *4 (Tex. App.—San Antonio Mar. 31, 1999, no pet.). Thus Elgohary did not properly preserve the issue of the attorney's fee award to the Association for review under Tex. R. App. P. Rule 33.1(a)(1).

### B. An Award of Attorney's Fees Under the Uniform Declaratory Judgments Act Was Appropriate and Authorized by Statute.

05267.183 / 1649190.1

Tex. Civ. Prac. & Rem. Code § 37.009 provides that a trial court may award attorney's fees in a declaratory judgment action. The "the award of attorney's fees in declaratory judgment actions is clearly within the trial court's discretion and is not dependent on a finding that a party 'substantially prevailed.'" *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996).

The Association filed a counterclaim against Elgohary seeking two declaratory judgments as well as recover of its attorney's fees. (CR.161.) Elgohary argues that the Association should not have been awarded fees because it did not seek damages or injunctive relief in its counterclaim. Elgohary cites no authority in support of this proposition and Texas law does not support such a proposition.

The Association presented expert testimony as to the matter of fees and after hearing same the Trial Court found that fees in the amount of $42,000.00 were reasonable and necessary for the work performed by the Association's attorneys in the counterclaim:

> Now, I'm going to arbitrarily reduce the award for attorney's fees in this case to $20,000. If you're unhappy with that reduction, you can certainly take that up on appeal. If there's appeal of this matter, you can certainly take up my completely arbitrary reduction from *your $42,000 request, which is probably and, in fact, I do find is completely reasonable and necessary attorney's fees*, but I'm going to arbitrarily strike it down to $20,000. (6-RR.94.)

05267.183 / 1649190.1

Despite finding that $42,000.00 in attorney's fees were reasonable and necessary, the trial court "arbitrarily" reduced the award of fees to the Association to $20,000.00. (6-RR.94.) The Association properly pleaded for attorney's fees under the Uniform Declaratory Judgments Act. The court heard evidence on the matter of attorney's fees and awarded fees pursuant to its authority under Texas law.

## C. The Record Supports An Award of Attorney's Fees.

At trial on March 13, 2014, the Association provided the expert testimony of attorney Neil H. McLaurin, IV ("McLaurin") in support of its claim for attorney's fees. (6-RR.66-85.) McLaurin testified in detail as to the attorney services performed on behalf of the Association with regard to its counterclaim, and the fees and costs charged with regard to same. (Id.) McLaurin also testified as to the factors considered in arriving at an opinion of the amount of fees that would be reasonable, necessary, equitable and just for the case. (6-RR.77-79.) The Association introduced into evidence 69 pages of attorney invoices (7-RR.8-136; Exhibit CP LOEN.14). McLaurin was cross-examined on the issue of attorney's fees by Elgohary (6-RR.79-85). Elgohary presented no testimony or evidence regarding attorney's fees. (6-RR.85). There is ample evidence in the record supporting the trial court's decision to award attorney's fees to the Association relating to its counterclaim.

67

**D.      Elgohary Was Timely Served With Exhibits Relating to Attorney's Fees.**

Elgohary claims that attorney fee invoices were not delivered to him until the eve of trial. (Appellant's Brief 64.) That statement is false and not substantiated by the record.   McLaurin testified under oath that invoices were tendered to Elgohary in compliance with the court's trial preparation order, which required the exchange of exhibits on or before February 14, 2014:

> MR. MCLAURIN, IV: Your Honor, we produced copies of our invoices to Mr. Elgohary along with all of trial exhibits pursuant to the Court's trial preparation order. We also e-mailed copies of the invoices after the hearing, in which I told Your Honor and Mr. Elgohary that [w]e would give him the invoices. That was one of the conditions to Your Honor's ruling on discovery. (6-RR.67.)

The Association's attorney fee invoice shows that exhibits were forwarded to Elgohary by hand-delivery on February 14, 2014:

> 02/14/14     020 Prepare trial exhibits; file trial preparation statement, exhibit list and witness list; forward copies of same to Elgohary by messenger…
> (RR7 135.)

Said invoice also reflects a messenger charge in the amount of $26.74 incurred on February 14, 2014 (7-RR.136).

Additionally, the trial court properly overruled Elgohary's objections to the introduction of CP LOEN 14, the Association's exhibit containing attorney fee invoices (6-RR.67). The trial court stated that "the basis for my ruling is that I don't

68

-- I don't -- based upon the types of records that are involved here and the types of cases and the claims that have been made, there's no unfair prejudice or surprise." (6-RR.67-68.)

Texas Rule of Civil Procedure 193 provides that a party who fails to make, amend or supplement a discovery response in a timely manner may not introduce material or information not timely disclosed, unless the court finds that:

> (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

> (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

However, **Elgohary did not object to CP LOEN 14 on the grounds that the Association made an untimely response to discovery or that the Association failed to timely provide Elgohary with attorney fee invoices**—his actual objection was: "this was one of the things I asked for in discovery that was quashed." (6-RR.67.) Elgohary did not argue that he was surprised or prejudiced. (Id.) As a result, Elgohary failed to preserve a complaint under 193.6 for appeal. TEX. R. APP. P. 33.1. The discovery request he references had in fact *not* been quashed. The order issued by the trial court on January 27, 2014, with regard to discovery specifically indicated that the Association was to provide Elgohary with invoices (no deadline specified in same). (CR.879-880.)

69

Additionally, Elgohary did not establish anywhere in the record that the Association failed to make, amend or supplement any discovery response in a timely manner. While he argues in his brief that invoices were not timely delivered to him, there is nothing in the record substantiating that accusation. Elgohary presented no witnesses at trial (6-RR.85) and did not file any pleading objecting to untimely discovery responses prior to trial.

Even if Mr. Elgohary had established that the Association had failed to timely supplement a discovery response, the trial court explicitly stated on the record that the introduction of the attorney fees invoices of the Association's counsel did not cause any unfair prejudice or surprise to Elgohary (6-RR.68). This ruling is supported by the record. (6-RR.67; 7-RR.135; 7-RR.136.)

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard, and a reviewing court shall uphold the trial court's ruling if there is any legitimate basis for the ruling. *Williams v. County of Dallas*, 194 S.W.3d 29, 31-32 (Tex. App—Dallas 2006, pet. denied.) Here there was clearly a legitimate basis for the Court's ruling, as Elgohary did not object to evidence or preserve a complaint under Rule 193.6 and the Court found that there was evidence in the record of no unfair surprise or prejudice to Elgohary.

**E.** **The Association Established Reasonable, Necessary, Equitable and Just Attorney's Fees Independent of Attorney Fee Invoices.**

70

Even if the invoices were excluded, the Association presented sufficient evidence to support an award of attorney's fees. "Documentary evidence is not a prerequisite to an award of attorneys' fees." *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 319 (Tex.App.—Dallas 2009, pet. denied). "Testimony from a party's attorney is taken as true as a matter of law and is alone sufficient to support an award of attorneys' fees if the testimony is clear, positive, direct, and free from contradiction." *Id.* "This is especially true where the opposing party had the means and opportunity to disprove the testimony but failed to do so." *Id.*

At trial, the Association's attorney, McLaurin, testified with particularity as to the work performed on the counterclaim month by month since the beginning of the case, providing detail as to the number of hours worked and the billable rate for that work for each month. (RR6 69-79.) While the invoices contained in Counter-Plaintiff's exhibit CP LOEN 14 provided evidence as to the attorney work performed on the case, said invoices were only one component in the evidence offered to the trial court on the issue of reasonable, necessary, equitable and just fees.

The trial court gave no indication that its judgment on attorney's fees was based solely or even primarily upon the invoices. After McLaurin's month by month detailed testimony as to the work performed in the case and the charges for

71

same, he testified as follows regarding attorneys fees incurred by the Association

through trial:

> Having reviewed the invoices and the work performed in the prosecution of this counterclaim and considering factors, such as: Time and labor required, novelty and difficulty of the questions involved, the skill requisite to perform the legal services properly, and preclusion of other work, the fees customarily charged in Harris County for similar legal services, and the experience, reputation, and ability of the attorneys performing the services, it is my opinion that a range of reasonable and necessary attorney's fees for the work performed in this case by counterclaim plaintiff's attorney is from $40,000 to $45,000. It is also my opinion that the fees charged by Bartley & Spears in this counterclaim have been reasonable and necessary, and that an award to the association of $42,450 would be equitable and just.
>
> …
>
> Finally, it is my opinion that the majority of fees in this case were caused by Mr. Elgohary. He filed two rounds of special exceptions which were -- which were overruled, both of which required hearings. He filed a motion to disqualify all counsel for the association which was denied. He filed a plea in abatement which was denied. He presented the association with multiple harassing discovery that wasn't relevant to the counterclaim, and set and cancelled hearings without notification to counsel. (6-RR.77-79.)

The testimony offered in support of the Association's attorney's fees (6-RR.66-85)

clearly comports with the standard of "clear, positive, direct and free from

contradiction," particularly in light of the fact that Elgohary presented no

testimony or evidence on the issue of attorney's fees. (RR6 85.) Accordingly, even

72

if this Court were to presume that the invoices were untimely, it has ample, independent evidence of the fees to uphold the award in this matter.

### F. Elgohary Presented No Testimony as to Attorney's Fees.

While Elgohary cross-examined McLaurin regarding his testimony on attorney's fees (RR6 79-85), he presented no testimony or evidence to controvert the issue of the Association's attorney's fees:

> THE COURT: Okay. Mr. Elgohary, do you have any witnesses?
>
> MR. ELGOHARY: I do not. I think I've made -- I think I have made my case in chief.
>
> THE COURT: Okay. Defendant rests. (6-RR.85.)

Thus the *only* evidence presented to the Court on the issue of attorney's fees and what award of attorney's fees would be reasonable, necessary, equitable and just was the testimony of the Association's expert witness. Elgohary has demonstrated no abuse of discretion by the trial court in awarding attorney's fees to the Association in this case. Elgohary presented no witnesses or evidence regarding attorney's fees. The evidence introduced by the Association to the Trial Court, viewed in the light most favorable to the Trial Court's ruling, clearly supports the judgment in this case. Therefore the judgment should be affirmed as to the award, but reformed as to the amount as set forth in Cross-Appellant's Brief.

73

**PRAYER**

For the reasons stated above Appellees Lakes on Eldridge North Community Association, Inc., RealManage, LLC and Christi Keller, Darla Kitchen, Don Byrnes, Michael Ecklund, Laura Vasallo Lee, John Kane, Julie Ann Bennett, Rick Hawthorne, Cara Davis, Jim Flanary, and Jill Richardson, and Neil McLaurin and Walter Spears pray that this Honorable Court: (1) affirm the trial court's October 12, 2013 summary judgment order dismissing Elgohary's claims in their entirety; (2) affirm the March 13, 2014 judgment on the Association's claims. By Cross-appeal, the Association prays that this Court reform the amount of the trial court's attorney's fees award from $20,000 to $42,000. Appellees further request any relief to which they may be entitled.

05267.183 / 1649190.1

Respectfully submitted,

**LeClairRyan**                                   **Bartley & Spears, P.C.**

By:*/s/ Brianne W. Richardson*_____      By:*/s/ Neil H. McLaurin*_____
Brianne W. Richardson                        Walter E. Spears
State Bar No. 24056500                       State Bar No.: 18898350
Email:                                       E-mail: wspears@bartleyspears.com
brianne.richardson@leclairryan.com           Neil H. McLaurin, IV
James J. McConn                              State Bar No. 24007657
Email:                                       E-mail: nmclaurin@bartleyspears.com
james.mcconn@leclairryan.com                 Bartley & Spears
1233 West Loop South, Suite 1000             14811 St. Mary's Lane, Suite 270
Houston, Texas 77027                         Houston Texas 77079
Telephone: 713-654-1111                      Telephone: 281-531-0501
Facsimile: 713-650-0027                      Facsimile: 281- 493-1539

**ATTORNEYS FOR**                                 **ATTORNEYS FOR APPELLEES,**
**APPELLEES,**                                    **LAKES ON ELDRIDGE NORTH**
**LAKES ON ELDRIDGE**                             **COMMUNITY ASSOCIATION,**
**NORTH COMMUNITY**                               **INC., NEIL McLAURIN & WALTER**
**ASSOCIATION, INC.;**                            **SPEARS**
**REALMANAGE, LLC; DARLA**
**KITCHEN; DON BYRNES;**
**MICHAEL ECKLUND; LAURA**
**VASALLO LEE; JOHN KANE;**
**JULIE ANN BENNETT; RICK**
**HAWTHORNE; CARA DAVIS;**
**CHRISTI KELLER; JIM**
**FLANARY; JILL**
**RICHARDSON**

05267.183 / 1649190.1

## CERTIFICATE OF SERVICE

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d), (e), I certify that I have served this document on all other parties which are listed below on March 20, 2015:

Victor S. Elgohary
6406 Arcadia Bend Ct.
Houston, Texas 77041-6222

ROSEMARY B. JACKSON
Rosemary B. Jackson, P.C.
State Bar No. 11671100
2016 Main
Houston, TX 77002


*/s/ Brianne W. Richardson*_____
Brianne W. Richardson

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9, I certify that this document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains **19,914** words in **its entirety**, including all parts exempted by Tex. R. App. P. 9.4(i)(1). The word-court for all sections excluding those exempted by Tex. R. App. P. 9.4(i)(1) is **16,721** words.


*/s/ Brianne W. Richardson*_____
Brianne W. Richardson

05267.183 / 1649190.1

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

VICTOR S. ELGOHARY
Appellant / Cross Appellee
V.
LAKES ON ELDRIDGE NORTH COMMUNITY ASSOCIATION, INC.;
REALMANAGE, LLC; DARLA KITCHEN; DON BYRNES; MICHAEL
ECKLUND; LAURA VASALLO LEE; JOHN KANE; JULIE ANN BENNETT;
RICK HAWTHORNE; CARA DAVIS; CHRISTI KELLER; JIM FLANARY;
JILL RICHARDSON; NEIL McLAURIN; WALTER SPEARS
Appellees,
V.
LAKES ON ELDRIDGE NORTH COMMUNITY ASSOCIATION, INC.
Cross Appellant

## INDEX OF APPENDICES

| APPENDIX NUMBER | DESCRIPTION | RECORD CITE |
|---|---|---|
| 1 | Order granting the Summary Judgment Dismissing All of Elgohary's Claims | CR.606-607 |
| 2 | Final Judgment on the Association's Declaratory Judgment Claims | CR.939-940 |
| 3 | Order Granting Motion for Protection | CR.879-880 |
| 4 | Excerpts from LOEN's Deed Restrictions | CR.196-97; CR.2011 CR.209; CR.218 |
| 5 | Excerpts from LOEN's By-Laws | CR.224; CR.227 |
| 6 | Excerpts from LOEN's Articles of Incorporation | CR.239-240 |
| 7 | Affidavit of Director/Appellee Darla | CR.245-247 |

| | | |
|---|---|---|
| | Kitchens in support of summary judgment motion | |
| **8** | Affidavit of Elgohary in support of summary judgment response | CR.594-599 |

05267.183 / 1649190.1

# APPENDIX 1

Filed 13 August 21 P3:16
Chris Daniel - District Clerk
Harris County
FAX15551016

CAUSE NO. 2013-17221

| | | |
|---|---|---|
| VICTOR S. ELGOHARY | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff* | § | |
| | § | |
| VICTOR S. ELGOHARY, DERIVATIVELY | § | |
| ON BEHALF OF NOMINAL DEFENDANT | § | |
| LAKES ON ELDRIDGE NORTH | § | |
| COMMUNITY ASSOCIATION, INC. | § | |
| | § | |
| v. | § | |
| | § | |
| | § | HARRIS COUNTY, T E X A S |
| LAKES ON ELDRIDGE NORTH | § | |
| COMMUNITY ASSOCIATION, INC.; | § | |
| REALMANAGE, LLC; DARLA KITCHEN; | § | |
| DON BYRNES; MICHAEL ECKLUND; | § | |
| LAURA VASALLO LEE, JOHN KANE; | § | |
| JULIE ANN BENNETT; RICK HAWTHORNE; | § | |
| CARA DAVIS; CHRISTI KELLER, | § | |
| JIM FLANARY AND JILL RICHARDSON | § | |
| | § | |
| *Defendants* | § | 234TH JUDICIAL DISTRICT |

## ORDER

On this day came on to be heard Defendants Lakes on Eldridge North Community Association, Inc. ("LOEN"), RealManage, LLC., Darla Kitchen, Don Byrnes, Michael Ecklund, Laura Vasallo Lee, John Kane, Julie Ann Bennett, Rick Hawthorne, Cara Davis, Christi Keller, Jim Flanary and Jill Richardson Traditional and No Evidence Motion for Summary Judgment. The Court, having reviewed the Motion, any response thereto, and argument of counsel, finds that Defendants' Motion is with merit and is granted. It is therefore:

ORDERED, ADJUDGED, AND DECREED, that:

Plaintiff's derivative and individual claims are hereby dismissed with prejudice.

SIGNED this the 12TH day of October, 2013.

OCT 1 2 2013

_____
JUDGE PRESIDING

23

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

05267.188 / 1576100.1

606

APPROVED AND ENTRY REQUESTED:

HAYS, McCONN, RICE & PICKERING

*James J. McConn, Jr.*

By: _____

**JAMES J. McCONN, JR.**
State Bar No. 13439700
**JANE LEA HAAS**
State Bar No. 24032655
1233 West Loop South Suite 1000
Houston, Texas 77027
Telephone : (713) 654-1111
Facsimile : (713) 650-0027

*Attorneys for Defendants*

05267.188 / 1576100.1

# APPENDIX 2

VICTOR S. ELGOHARY § IN THE DISTRICT COURT OF

VICTOR S. ELGOHARY, DERIVATIVELY §
ON BEHALF OF NOMINAL DEFENDANT §
LAKES ON ELDRIDGE NORTH §
COMMUNITY ASSOCIATION, INC. §

VS. § HARRIS COUNTY, T E X A S

LAKES ON ELDRIDGE NORTH §
COMMUNITY ASSOCIATION, INC.; §
REALMANAGE, LLC; DARLA KITCHEN; §
DON BYRNES; MICHAEL ECKLUND; §
LAURA VASALLO LEE; JOHN KANE; §
JULIE ANN BENNETT; RICK §
HAWTHORNE; CARA DAVIS; CHRISTI §
KELLER; JIM FLANARY; JILL §
RICHARDSON § 234TH JUDICIAL DISTRICT



**FILED**
Chris Daniel
District Clerk
Time: MAR 1 3 2014
By Harris County, Texas
Deputy

## FINAL JUDGMENT

On the 13th day of March, 2014, came on to be heard the trial of Counter-Plaintiff Lakes on Eldridge North Community Association, Inc. and Counter-Defendant Victor S. Elgohary. Counter-Plaintiff and Counter-Defendant appeared by and through counsel of record and announced ready for trial. The Court proceeded to hear the evidence and arguments presented by the parties supporting the entry of a Judgment and finds that the Judgment should be entered. It is therefore,

ORDERED, ADJUDGED and DECREED that, pursuant to the Uniform Declaratory Judgments Act, the Association is permitted to regulate the use of the West Little York entry/exit. It is further,

ORDERED, ADJUDGED and DECREED that, pursuant to the Uniform Declaratory Judgments Act, the Association is not prohibited from placing signs on Association property, so long as said signs do not relate to the construction, improvement, alteration, or addition to lots within the Subdivision. It is further

ORDERED, ADJUDGED and DECREED that Counter-Plaintiff Lakes on Eldridge North Community Association, Inc. shall have and recover from Counter-Defendant Victor S. Elgohary $ 20,000 in reasonable and necessary attorneys fees through the trial of this case; It is further,

031314VJ7 540 102 - JUDGMENT.wpd

939

✓ ORDERED, ADJUDGED and DECREED that Counter-Plaintiff Lakes on Eldridge North Community Association, Inc. shall have and recover from Counter-Defendant Victor S. Elgohary: $ 2500 in additional reasonable and necessary attorneys fees in the event Counter-Defendant files an unsuccessful motion for new trial or other similar motion, $ 7500 in additional reasonable and necessary attorney's fees in the event Counter-Defendant should file an unsuccessful appeal with the court of appeals; $ 7500 in additional reasonable and necessary attorney's fees in the event Counter-Defendant files an unsuccessful petition for review to the Supreme Court of Texas and $ 5000 in additional reasonable and necessary attorney's fees in the event a petition for review is granted but Counter-Defendant prosecutes an unsuccessful appeal to the Supreme Court of Texas. It is further,

ORDERED, ADJUDGED and DECREED that all costs of court expended or incurred in this cause are hereby adjudged against the Counter-Defendant. It is hereby

ORDERED, ADJUDGED and DECREED that this judgment shall bear interest at the rate of 5.00% per annum until satisfied;

This Final Judgment incorporates the order of this Court entered October 12, 2013, dismissing with prejudice all of Plaintiff Victor S. Elgohary's derivative and individual claims.

This judgment is final and appealable and disposes of all parties and claims herein.

SIGNED this 13 day of March , 2014.

JUDGE PRESIDING

# APPENDIX 3



NO. 2013-17221

| | | |
|---|---|---|
| VICTOR S. ELGOHARY | § | IN THE DISTRICT COURT OF |
| | § | |
| VICTOR S. ELGOHARY, DERIVATIVELY | § | |
| ON BEHALF OF NOMINAL DEFENDANT | § | |
| LAKES ON ELDRIDGE NORTH | § | |
| COMMUNITY ASSOCIATION, INC. | § | |
| | § | |
| VS. | § | HARRIS COUNTY, T E X A S |
| | § | |
| LAKES ON ELDRIDGE NORTH | § | |
| COMMUNITY ASSOCIATION, INC.; | § | |
| REALMANAGE, LLC; DARLA KITCHEN; | § | |
| DON BYRNES; MICHAEL ECKLUND; | § | |
| LAURA VASALLO LEE; JOHN KANE; | § | |
| JULIE ANN BENNETT; RICK | § | |
| HAWTHORNE; CARA DAVIS; CHRISTI | § | |
| KELLER; JIM FLANARY; JILL | § | |
| RICHARDSON | § | 234TH JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED that on this day came on to be heard Counter-Plaintiff Lakes on

Eldridge North Community Association, Inc.'s Objections to Discovery and Motion for Protection

from Discovery propounded by Victor S. Elgohary and the Court having considered the Objections

and Motion for Protection, and any responses thereto, the evidence on file, and any arguments of

counsel, finds that such Objections and Motion for Protection are with merit, and

ORDERS that Counter-Plaintiff's Objections to Discovery are hereby SUSTAINED. The

Court further

ORDERS that Counter-Plaintiff's Motion for Protection from Discovery is hereby

GRANTED, and futher

ORDERS that Lakes on Eldridge North Community Association, Inc. shall file no responses

to Elgohary's Request for Production of Documents, except as set forth herein, and further

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

879

ORDERS that Lakes on Eldridge North Community Association, Inc. shall produce in response to Elgohary's Request for Production No. 6 copies of invoices for attorney's fees incurred in this lawsuit and further

ORDERS that Elgohary shall not take the depositions of the corporate representative(s) of Lakes on Eldridge North Community Association, Inc., Cara Davis, Don Byrnes, Laura Vassalo-Lee, John Kane, Michael Ecklund, Darla Kitchen, Christi Keller or Michael Dach or any other person in relation to this matter and further

ORDERS that the subpoena *duces tecum* relating to Michael Dach is hereby QUASHED.

SIGNED on ___27 January___, 2014.

_____
JUDGE PRESIDING

880

# APPENDIX 4

'T9E 357

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

# THE LAKES ON ELDRIDGE NORTH
## DECLARATION OF COVENANTS, CONDITIONS & RESTRICTIONS

09/07/99 300323085 T952857 $63.00

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | | KNOW ALL PERSONS BY THESE PRESENTS: |
| COUNTY OF HARRIS | § | |

THIS DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS is made this 2nd day of September, 1999, by The Lakes On Eldridge North, Ltd., a limited partnership formed pursuant to the applicable provisions of the Texas Revised Limited Partnership Act (hereinafter sometimes referred to as "Declarant"),

## WITNESSETH:

WHEREAS, the Declarant is the owner of the land within The Lakes on Eldridge North, a subdivision of land in Harris County, Texas, which presently is composed of Section One (1) through and including Section Four (4), according to the four (4) plats thereof recorded under Film Code Numbers 425020, 425023, 425026 and 425029 in the Map Records of Harris County, Texas (all of such land so owned and the improvements now or hereafter situated thereon being hereinafter referred to as the "Property"); and

WHEREAS, it is the desire and intention of Declarant to restrict said Property according to a common plan as to use, permissible construction, and common amenities so that all land within the Property shall be benefitted and each successive owner of all or a part of said land shall be benefitted by preserving the values and the character of said land; and

WHEREAS, Declarant desires to take advantage of the geographical features of the Property and proposes to establish a residential living environment which is dependent upon and in furtherance of aesthetic considerations in order to create a residential community having common areas, facilities and landscaping, and to provide for the maintenance, repair, operation and improvement of same; and, to this end, desires to subject the Property to the covenants, conditions, restrictions, easements, charges and liens hereinafter set forth, to be binding upon each owner of a Lot or Lots within the Property, and which restrictions, covenants and conditions will also comply with the requirements of local governmental authorities and the zoning and subdivision ordinances and regulations of Harris County, Texas; and

WHEREAS, Declarant has deemed it desirable, and in the best interests of the residents and future residents of the Property, for the efficient preservation of the values and amenities in the Property and the maintenance, repair, operation and improvement of the common areas, facilities and landscaping, to create an entity to which would be delegated and assigned the powers of maintaining and administering same and enforcing these restrictions, covenants, easements,

5744.27508GAM.05A.KL(Restrictions).wpd -1-

EXHIBIT
1

196

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

charges and liens, and collecting and disbursing the assessments and charges hereinafter created; and

WHEREAS, Declarant has caused to be incorporated The Lakes on Eldridge North Community Association, a Texas non-profit corporation, and has designated it as such entity; and

NOW, THEREFORE, Declarant, for and in consideration of, and expressly for the benefit of, and to bind, its successors in interest, does hereby agree and declare that the Property, including such additions thereto as may hereafter be made pursuant to Article 1, Section 3 hereof, shall be held, transferred, sold, conveyed and occupied subject to the covenants, conditions, restrictions, easements, charges and liens hereinafter set forth, which shall run with the land and shall be binding upon all parties having any right, title, or interest in or to the Property, or any part thereof, and their heirs, successors, representatives and assigns. The covenants, conditions, restrictions, easements, charges and liens hereinafter set forth are covenants running with the land at law as well as in equity.

## ARTICLE I.

### GENERAL

Section 1. Definitions. The following words, when used in this Declaration, unless the context shall prohibit, shall have the following meanings:

a.  "Area", when followed by a Roman numeral, shall mean and refer to a specific location which shall have been described and defined either in Section 2 of this Article I or in one of the Supplementary Declarations provided for in Section 3 of this Article I.

b.  "Association" shall mean and refer to The Lakes on Eldridge North Community Association, Inc., a Texas non-profit corporation, which will have the power, duty and responsibility of maintaining and administering the Common Areas, Common Facilities, Common Personalty, Detention Areas and all Landscaping in the Common Areas, and administering and enforcing these covenants, conditions and restrictions and collecting and disbursing the assessments and charges hereinafter prescribed.

c.  "Builder" shall mean and refer to any person or entity undertaking the construction of a residence on a Lot.

d.  "Common Areas" shall mean and refer to areas of land owned, leased or used by the Association, and/or easement areas for walls or fences, lakes/detention areas, entryways, access or walkways, recreational facilities, and other purposes benefitting the Members, including any improvements and landscaping located thereon, for the common use, enjoyment and benefit of the Members of the Association.

197

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

Section 4. Termination of Membership. The membership of a person or entity in the Association shall terminate automatically whenever such person or entity ceases to be an Owner, except that such termination shall not release or relieve any such person or entity from any liability or obligation incurred under or in any way connected with the Association or this Declaration during the period of ownership, nor impair any rights or remedies which the Association or any other owner has with regard to such former Owner.

## ARTICLE III.

## ASSESSMENTS

Section 1. Covenants for Assessments. The Declarant, for each Lot owned by it within the Property (being all Lots within the Property), hereby covenants to pay and each purchaser of any such Lot by acceptance of a deed therefor, whether or not it shall be so expressed in any such deed or other conveyance, shall be deemed to covenant and agree to pay, to the Association: (1) Regular Annual Assessments or charges (as specified in Section 3 of this Article III); (2) Special Assessments (as specified in Section 4 of this Article III), and (3) Special Member Assessments (as specified in Section 5 of this Article III), all of such assessments to be fixed, established and collected as hereinafter provided.

Section 2. Purpose of Assessments. The assessments levied by the Association shall be used exclusively for the purpose of protecting and promoting the comfort, collective mutual enjoyment, health and welfare of the Owners of the Property, or any part thereof, and for carrying out the purposes of the Association as stated in its Articles of Incorporation and this Declaration. The judgment of the Board of Directors of the Association in determining the functions to be performed by the Association, in determining the amount of Regular Annual Assessments, special Assessments and Special Member Assessments, and in the expenditure of funds shall be final and conclusive so long as its judgment is exercised in good faith.

Section 3. Regular Annual Assessments. Each Owner of a Lot shall pay Regular Annual Assessments to the Association.

  a.   Purpose. Regular Annual Assessments shall be levied upon each Lot to provide funds for the use and benefit of the Owners in the Property. Regular Annual Assessments may be used to finance in particular, but not by way of limitation, the following:

      (1)   Operation, maintenance, repair, replacement and improvement of the Common Areas, the Common Facilities, Common Personal Property, Detention Areas and all Landscaping in the Common Areas, including funding of appropriate reserves for future repair, replacement and improvement of same;

      (2)   Payment of taxes and premiums for insurance coverage;

201

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

Section 8. Fees. The Architectural Control Committee shall have the right to charge a review fee, to be established by the Board of Directors, for review of any plans or specifications submitted for approval. The Architectural Control Committee shall also have the right to charge a fee as a deposit, to be established by the Board of Directors to ensure compliance with the time constraints established herein for commencement and completion of construction. Said deposit shall be applied by the Architectural Control Committee to its costs to obtain compliance with said constraints. If the deposit is insufficient to pay the cost, the Owner shall pay the balance on demand.

## ARTICLE V.

## PROTECTIVE COVENANTS AND RESTRICTIONS

Section 1. Covenants Applicable. The following provisions shall be applicable to any and all construction, improvement, alteration, or addition to the Lots.

a. Each Lot shall be used exclusively for single family residential dwelling purposes only not to exceed the greater of two and one-half (2 ½) stories in height, or forty feet (40') above nearest curb elevation. No building or structure intended for or adapted to business purposes, and no apartment house, hospital, sanatorium or doctor's office, or other multifamily dwelling shall be erected, placed, permitted or maintained on any Lot, or on any part thereof. No improvement or structure whatsoever, other than a first-class private dwelling house, patio walls, swimming pool, and customary outbuildings, garage for not more than three (3) cars, except custom home Sections may have a garage for four (4) cars, porte' cochere, bona fide servants' quarters, waterfront structures, or bona fide guest house, may be erected, placed, or maintained on any Lot. No other Improvements on the Lot shall exceed the height of the main dwelling house.

b. No sign, including political signs, advertisement, billboard or advertising structure of any kind shall be displayed, maintained or placed in the public view on or from any part of the Property or on any Lot, except signs temporarily used by Declarant or any Owner on a Lot, of not more than six (6) square feet, advertising the Lot for sale or rent, or signs of architects and builders during the period of construction and sale of improvements on any Lot.

c. The total living area of any single-story dwelling, exclusive of porches, servants' quarters, customary outbuildings and garages, shall not be less than 2,000 square feet, except for patio homes for which the minimum living area of 1,500 square feet will be required for single story dwellings.

d. The living area of any two-story dwelling constructed on any Lot, exclusive of open porches, servants' quarters and garages, shall not be less than 1,700 square feet on the ground floor and not less than 2,300 for the total living area, and the

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

Section 3. Extent of Easements. The rights and easements of enjoyment created hereby shall be subject to the following:

a. The right of the Association to prescribe rules and regulations for the use, enjoyment, and maintenance of the Common Areas.

b. The right of the Association to sell, convey or dedicate to the appropriate governmental authority, the Common Areas, or any part thereof, provided such sale, conveyance or dedication is approved by a majority of the total eligible votes of each class of the Members of the Association, voting in person or by proxy, at a meeting duly called for such purpose, written notice of which shall be given to all Members at least thirty (30) days in advance of the meeting and shall set forth the purpose of the meeting.

c. The right of the Association to borrow money for the purpose of improving, maintaining, or repairing the Common Areas and/or Common Facilities, or any part thereof, and to mortgage the Common Areas, Common Facilities, or any part thereof, provided the mortgaging of the Common Areas is approved by a majority of the total eligible votes of each class of Members of the Association voting in person or by proxy, at a meeting duly called for such purpose.

d. The right of the Association to take such steps as are reasonably necessary to protect the Common Areas and/or Common Facilities, or any part thereof, against foreclosure.

e. The right of the Association to suspend the voting rights and right to use the Common Facilities of any Member for any period during which any assessment or other amount owed by the Member to the Association remains unpaid or during which such Member is in violation of any of the provisions of this Declaration.

f. The right of the Association to establish reasonable rules and regulations governing the Members' use and enjoyment of the Common Areas, and to suspend the enjoyment rights of any Member for any period not to exceed sixty (60) days for any infraction of such rules and regulation.

g. The right of the Association to charge reasonable admission and other fees for the use of any recreational facilities which are a part of the Common Areas.

5744.27508GAM.05A.KL(Restrictions).wpd                    -23-

218

# APPENDIX 5

# FOURTH AMENDED AND RESTATED

# BY-LAWS OF

# LAKES ON ELDRIDGE NORTH COMMUNITY ASSOCIATION, INC.

# A NON-PROFIT CORPORATION

LAKES ON ELDRIDGE NORTH COMMUNITY ASSOCIATION, INC. (the "Association") is the association referred to in the Lakes on Eldridge Declaration of Covenants, Conditions and Restrictions (the "Restrictions"), filed in the Official Public Records of Real Property of Houston, Harris County, Texas. The terms used in these By-Laws shall have the same meanings given to them in the Restrictions, unless otherwise specifically provided herein. In the event of any conflict between the terms and provisions of these By-Laws and the Restrictions, the Restrictions shall control. These amended and restated by-laws take effect July 24, 2008.

## ARTICLE I.

## REGISTERED AND PRINCIPAL OFFICE

1.1 Registered Office and Agent. The registered agent and office may change from time to time. The Texas Secretary of State will be notified of any such change.

1.2 Principal Office. The principal office of the Association shall be located in the City of Houston, Harris County, Texas.

1.3 Other Offices. The Association may also have offices at such other places both in and out of the State of Texas as the Board of Directors may from time to time determine or the business of the Association may require.

## ARTICLE II.

## MEMBERS, MEETINGS AND VOTING RIGHTS

2.1 Members.

(a) Each and every person, persons, or legal entity who shall own any Lot, shall automatically be, and must remain, a Member of the Association. Such membership shall be appurtenant to each Lot and may not be severed from or held separately there from. Provided, that any person or entity who holds such an interest merely as security for the performance of any obligation shall not be a Member. No Member shall have any right or

—1—

4TH_AMENDED_AND_RESTATED_BYLAWS

EXHIBIT
2
tabbies

224

2.8     Organization. The President shall preside at all meetings of the Members. In his absence a Vice President shall preside. In the absence of all of these officers any Member or the duly appointed proxy of any Member may call the meeting to order and a chairman shall be elected from among the Members present.

The Secretary of the Association shall act as secretary at all meetings of the Members. In his absence an assistant secretary shall so act and in the absence of all of these officers the presiding officer may appoint any person to act as Secretary of the meeting.

2.9     Action Without Meeting. Any action required by any provision of law or of the Articles of Incorporation or these By-Laws to be taken at a meeting of the Members or any action which may be taken at a meeting of the Members may be taken without a meeting if a consent in writing, setting forth the actions so taken, shall be signed by a majority of the Members entitled to vote with respect to the subject matter thereof, and such consent shall have the same force and effect as an unanimous vote of the Members. The consent may be in more than one counterpart.

2.10    Telephone and Similar Meetings.   Members, directors and committee members may participate in and hold a meeting by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can communicate with each other. Participation in such a meeting shall constitute presence in person at the meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

2.11    Order of Business at Meetings. The order of business at annual meetings and so far as practicable at other meetings of Members shall be determined by the Board of Directors.

## ARTICLE THREE

## BOARD OF DIRECTORS

3.1 Management. The property, business and affairs of the Association shall be managed by the Board of Directors who may exercise all such powers of the Association and do all such lawful acts and things as are not (by statute or by the Articles of Incorporation or by these By-Laws) directed or required to be exercised or done by the Members. The Directors shall have all of the powers, authority and duties of the Association existing under the Act, the Restrictions and these By-Laws, which shall be exercised exclusively by the Board, its agents, contractors or employees, subject only to approval by Members when such is specifically required by law, the Restrictions or these By-Laws.

-4-

4TH_AMENDED_AND_RESTATED_BYLAWS

# APPENDIX 6

FILED
In the Office of the
Secretary of State of Texas

AUG 3 0 1999

Corporations Section

# ARTICLES OF INCORPORATION
## OF
## LAKES ON ELDRIDGE NORTH COMMUNITY ASSOCIATION, INC.

I, the undersigned, a natural person of the age of eighteen (18) years or more, acting as incorporator of a corporation under the Texas Non-Profit Corporation Act, do hereby adopt the following Articles of Incorporation for such corporation.

## ARTICLE I

The name of the corporation is Lakes on Eldridge North Community Association, Inc. (the "Association").

## ARTICLE II

The Association is a non-profit corporation organized pursuant to the Texas Non-Profit Corporation Act.

## ARTICLE III

The period of its duration is perpetual.

## ARTICLE IV

The purposes for which the Association is formed are for the following:

a.      Specifically:

   (i)      to provide an organization of the owners of the lots in the Lakes on Eldridge North Subdivision (the "Subdivision") located in Harris County, Texas and to enforce and manage the Declaration of Covenants, Conditions & Restrictions (the "Restrictions") recorded in the Official Public Records of Real Property, Harris County, Texas; and

   (ii)     to provide the management, maintenance, preservation and architectural control of Subdivision.

b.      Generally:

   (i)      to promote the health, safety and welfare of the owners of the Subdivision;

J:\WPFILES\5744\27508\GAM.007.kl.(Articles of Inc.).wpd          -1-          *Exhibit C*

EXHIBIT

3

239

(ii) to exercise all the powers and privileges and to perform all the duties and obligations of the Association as set forth in the Restrictions and the Bylaws of the Association;

(iii) to fix, levy, collect and enforce payment of any charges or assessments as set forth in the Restrictions and to pay all expenses in connection with such charges or assessments or which are otherwise incidental to the conduct of the business of the Association, including all licenses, taxes or governmental charges levied or imposed against the property of the Association;

(iv) to acquire (by gift, purchase, or otherwise), own, hold improve, build on, operate, maintain, convey, sell, lease, transfer, dedicate for public use or otherwise to dispose of real or personal property in connection with the affairs of the Association;

(v) To borrow money, to mortgage, to pledge, to deed in trust, or to hypothecate any or all of the Association real or personal property as security for money borrowed or debts incurred;

(vi) To have and to exercise any and all powers, rights, and privileges that a corporation organized under the Texas Non-Profit Corporation Act, by law, may now or at a later time have or exercise; and

(vii) To act in the capacity of principal, agent, joint venturer, partner or otherwise in furtherance of the primary purpose of the Association.

c. Notwithstanding any of the above statements of purpose, the Association shall not, except to an insubstantial degree, engage in any activities or exercise any powers that are not in furtherance of the primary purpose of the Association. Further, the Association is organized and shall be operated exclusively for the civic and community service set forth herein and no part of any net earnings shall inure (other than by acquiring, constructing, or providing management, maintenance and care of the Association property or by a rebate of excess membership dues, fees or assessments) to the benefit of any private individual.

## ARTICLE V

The street address of its initial registered office is 9801 Westheimer, Suite 701, Houston, Texas 77042, and the name of its initial registered at such address is Bassam Barazi.

J:\WPFILES\5744\27508\OAM.007.kl.(Articles of Inc.).wpd     -2-

# APPENDIX 7

CAUSE NO. 2013-17221

| | | |
|---|---|---|
| VICTOR S. ELGOHARY | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff* | § | |
| | § | |
| VICTOR S. ELGOHARY, DERIVATIVELY | § | |
| ON BEHALF OF NOMINAL DEFENDANT | § | |
| LAKES ON ELDRIDGE NORTH | § | |
| COMMUNITY ASSOCIATION, INC. | § | |
| | § | |
| v. | § | |
| | § | HARRIS COUNTY, T E X A S |
| LAKES ON ELDRIDGE NORTH | § | |
| COMMUNITY ASSOCIATION, INC.; | § | |
| REALMANAGE, LLC; DARLA KITCHEN; | § | |
| DON BYRNES; MICHAEL ECKLUND; | § | |
| LAURA VASALLO LEE, JOHN KANE; | § | |
| JULIE ANN BENNETT; RICK HAWTHORNE; | § | |
| CARA DAVIS; CHRISTI KELLER, | § | |
| JIM FLANARY AND JILL RICHARDSON | § | |
| | § | |
| *Defendants* | § | 234TH JUDICIAL DISTRICT |

## AFFIDAVIT OF DARLA KITCHEN

Before me, the undersigned notary, on this day personally appeared Darla Kitchen, the affiant, a person whose identity is known to me. After I administered the oath to affiant, affiant testified:

1. "My name is Darla Kitchen. I am over the age of 18 and am otherwise competent to execute this affidavit. I have personal knowledge of the matters set forth herein and all the matters set forth herein are true and correct.

2. I was a volunteer who served on the Board of Directors on the Lakes of Eldridge North Community Association, Inc. (hereinafter called "LOEN") from 2010 to February 2013, wherein I held various offices on the Board. I did not receive compensation for this service to LOEN. I was also a member of LOEN, and owned my residence within the LOEN community for 12 and a 1/2 years.

3. In my role as a Board member, I had personal knowledge and was familiar with the Declaration of Covenants, Conditions and Restrictions, the Fourth Amended and Restated By-Laws of Lakes on Eldridge North Community Association, Inc., and the Articles of Incorporation of Lakes on Eldridge North Community Association (hereinafter called the "dedicatory instruments"). In my role on the Board of Directors, I acted within the authority given to the Board of Directors via the dedicatory instruments and the decisions made were to promote the health, safety and welfare of the LOEN community, as well as to promote the expressed purpose of the LOEN within the dedicatory instruments as the below explanations will support.

05267.188 / 1582556.1

EXHIBIT
4
24

4. As an officer of LOEN and acting within the authority contained in the dedicatory instruments, I, as part of the Board, made the decisions to (1) regulate the common areas by restricting the use of the West Little York entry/exit between the hours of 11:00pm to 5:00am, and (2) place signs to direct visitor traffic. I made these decisions based on issues which the members of the LOEN had raised regarding tailgating at the gate, security and safety concerns for the property in general, and in order to assist visitors to the manned gate by which they should enter LOEN. To my knowledge, we, the Board, followed the proper procedure outlined in the dedicatory instruments in making these decisions. We held Board meetings, and voted on these issues. Prior to our voting to implement the restricted access through the gate at issue, and placing signs for visitors to direct them to the proper manned gate entry, we discussed and considered whether restricting the gate at West Little York and placing the signs of which Plaintiff complains would be in the best interest of the members of the LOEN, would relieve some of the problems with tailgating into the community, would assist visitors with entering the property through the manned gate, and thus, would help protect and promote the welfare of the LOEN members.

5. Further, after our decision to restrict the hours of operation for that access gate, the Board conducted a survey of the LOEN members in order to ascertain whether the members wanted the access gate to be locked between 11:00pm to 5:00am or not, and whether they would prefer fewer restricted hours. Further, we had town hall meetings two or three times a year where all residents could speak about any topic they wanted to address.

6. Still further, the Board continued to investigate whether restricting the operational hours of this particular gate was beneficial to its LOEN members by contacting the CyFair Volunteer Fire Department as well as the Harris County Fire Marshal to ensure that emergency vehicles could access the property during the non-operational hours. We further contacted a real estate expert in order to investigate the Houston ordinances and permanent access easements issues. Again, in my role as officer, all of the discussions, procedures, and investigations regarding the decision of restricting the access at West Little York gate were done in good faith and in the best interest of the LOEN members.

7. In my volunteer role as officer for LOEN, I was familiar with the Mr. Elgohary's allegations that funds have been misappropriated from LOEN by its Board of Directors and the management company RealManage as well as by Ms. Keller, individually. The Board also contacted the office of the Harris County Fire Marshal's office who conducted an onsite inspection requesting a minor modification which was done and then approved the gates operation and its closing. I had personal knowledge that the assessments and fees collected on behalf of the LOEN community from its members were taken and used for the benefit of the community, the purpose of which is to protect and promote the comfort, collective mutual enjoyment, health and welfare of the Owners of the Property pursuant to the "Purpose of Assessments" in the Declaration of Covenants, Conditions & Restrictions.

05267.188 / 1582556.1

8. In my capacity as Board member, via the Declaration of Covenants and By-Laws. I believe that the expenditures of the LOEN funds were in good faith in order to benefit the community. For example, gift cards were given to the volunteers within the LOEN community who performed outstanding service for special community wide projects. This was done in order to promote volunteerism within the community and to better the community in general by having more volunteers come forward to large community projects. The amount of funds spent on social/community and/or volunteer awards were a very small portion of the LOEN budget, meaning that the assessment for these activities/awards was less than 2% of the annual assessment to each household.

9. Pursuant to my authority as officer within the By-Laws, I believe that I managed the business and affairs of the LOEN, including adherence to the accounts payable process for all expenditures of the fees and assessments collected from the LOEN members. Again, each expenditure decision has been made by the Board of Directors by following the procedure for such decisions set forth in the Declarations and the By-Laws for the LOEN. Further, each expenditure was a part of the accounts payable process which was kept and maintained by the Board of Directors and LOEN's management company, RealManage, including Ms. Keller.

10. Further, the LOEN Association hires a CPA for its tax reporting to the IRS, and has since 2006, I believe. As officer of LOEN, I am unaware of any misrepresentations made to the IRS concerning the LOEN. Still further, as a Board member, I am personally aware that the Board has managed the financial affairs of LOEN by bringing the operations in below budget while also being able to fund the operating reserve and capital replacement reserve without reducing any of the services to the LOEN community.

Further Affiant sayeth not.

_Darla Kitchen_
Darla Kitchen

SWORN TO AND SUBSCRIBED before me, Notary Public, on this the _16th_ day of _August_, 2013.

_Gloria E. Flores_
Notary Public, In and For
the State of Texas
My Commission Expires: _____

GLORIA E. FLORES
Notary Public, State of Texas
My Commission Expires
May 31, 2015

05267.188 / 1582556.1

247

# APPENDIX 8

**Filed 13 September 30 P2:50**
**Chris Daniel - District Clerk**
**Harris County**
**FAX15582830**

No. 2013-17221

| | | |
|---|---|---|
| Victor S. Elgohary, | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| Victor S. Elgohary, Representatively on | § | |
| behalf of Nominal Defendant Lakes on | § | |
| Eldridge North Community Association, Inc. | § | |
| | § | |
| V. | § | |
| | § | |
| Lakes on Eldridge North | § | |
| Community Association, Inc.; | § | HARRIS COUNTY, TEXAS |
| RealManage, LLC; Darla Kitchen; | § | |
| Don Byrnes; Michael Ecklund; | § | |
| Laura Vasallo Lee; John Kane; | § | |
| Julie Ann Bennett; Rick Hawthorne; | § | |
| Cara Davis; Christi Keller, Jim Flanary | § | |
| Jill Richardson | § | |
| | § | |
| Defendants | § | 234th JUDICIAL DISTRICT |

## AFFIDAVIT OF VICTOR ELGOHARY

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned notary public, on this day personally appeared Victor S. Elgohary, attorney of record for Plaintiffs in the above entitled cause, who, being by me duly sworn, on his oath stated as follows:

1.     My name is Victor Elgohary. I am an attorney at law and Certified Public Accountant duly admitted to practice in the State of Texas and before this Honorable Court, I am over the age of eighteen (18) years and am fully competent to make this Affidavit. I have personal knowledge of the facts set out in this affidavit and those facts are true and correct.

594

2. I first contacted the officers and directors in June 2011 regarding the community association's use of funds for extraneous charitable fundraising purposes and altering the easements of residents that recorded in the Harris County Clerk's office. At that time I also made a request to review the books and records of the association.

3. After weeks of discussion and negotiation, I received a very limited set of documents from the association's attorney on August 3, 2011. I made several additional requests for the remaining documents that were requested, many of which were never tendered due to loss, destruction, or claims of privacy. I received a few additional documents on August 5, 2011.

4. In my review of those limited documents at the time, I noted that a majority of the corporate minutes for the association over the past six years were missing. I also found that there were numerous entries where the corporation's funds were tendered directly to board members, their immediate family members, and their selected neighbors that were undocumented as to their purpose or necessity in regards to the operation of the association and were not in compliance with the articles of incorporation for Lakes on Eldridge North.

5. I also noted in my review of the limited documents that there were no financial controls in place in terms of separation of duties and payment approvals that would prevent defalcation of the corporation's funds.

6. In addition to the lack of financial controls that were then in place for the association, I noted in my review of the documents that the officers and the agents of the association made written misrepresentations to the audit firm in regards to the operations of the association.

595

7.      In my review of the financial documents that were tendered, I saw that the association represented to the United States Internal Revenue Service in an application for exemption from taxation that there are no restrictions to access the community's common area property. That assertion is untrue and a blatant misrepresentation given the limited access into and out of the community without authorization either through the use of a gate pass or registering at the entrance with the security guard.

8.      On August 27, 2012, I met with Kristi Keller and was able to view additional documents that I had requested. I was not permitted to retain any copies of the documents I viewed on her computer, but my review of the electronic documents with her revealed further defalcations and misappropriation of funds, improper tax reporting, and overall mismanagement of the corporation's assets.

9.      I personally served discovery of interrogatories and production of documents on Defendants by hand delivery on August 5, 2013 at the offices of Hays, McConn, Rice & Pickering.

10.     I received a copy of Defendants Objections to Plaintiff's Discovery, Motion for Protection from Plaintiff's Written Discovery, and Motion to Stay Discovery Pending Ruling on Defendants' Motion for Summary Judgment on August 21, 2013 by email. In the email, Mr. McConn asked if we are opposed to the motion.

11.     The next day, I responded to Mr. McConn by reply email stating that I would be happy to confer with him regarding the discovery that was sent to the Defendants. In that same email I reminded Mr. McConn that Judge Ward made it clear at the last hearing that the lawyers must confer on all items before filing them. I suggested that e-mails of a proposed

596

filing, without more, would unlikely be considered a "conference" from what I understood of the judge's directive to the parties back in June 2013.

12.     Mr. McConn telephoned me on the afternoon of August 22, 2013. In our conversation I reiterated that I would be happy to go through the discovery and discuss his objections. He responded to me that they were all overbroad and I should write him a letter stating why each request was proper and would lead to the discovery of admissible evidence. I told Mr. McConn I was opposed to the blanket objections in his motion but would be happy to deal with and discuss objections as they applied to each individual request for production and interrogatory. Mr. McConn declined my invitation to confer further and filed the motion sometime that same day. Our telephone conversation lasted 12 minutes.

13.     Mr. McConn never delivered the motion for summary judgment and the notice of hearing to me pursuant to Rule 21a. This summary judgment motion was only sent to me by email.

14.     Mr. McConn delivered an Amended Motion for Protection from Plaintiff's Written Discovery, and Motion to Stay Discovery Pending Ruling on Defendants' Motion for Summary Judgment to me pursuant to Rule 21a on September 4, 2013. I received the motion on September 6, 2013 along with a notice of hearing set for September 16, 2013.

15.     I have still not received Defendants' Motion for Traditional and No Evidence Summary Judgment or a notice of hearing on this motion pursuant to Rule 21a.

16.     I have not signed a Rule 11 agreement with Mr. McConn that alters notice or delivery requirements under the Texas Rules of Civil Procedure.

17.     I maintain an office for the practice of law in Houston Texas. I am the attorney

597

responsible for this file, and I am familiar with its contents and the time extended thereon. It is my practice to maintain time records, and my fees are generally computed on an hourly basis. In addition, I consider the following factors:

    a.    the novelty and difficulty of the questions involved and the skill requisite to perform the legal services properly;

    b.    likelihood that the acceptance of the particular employment would preclude other employment;

    c.    the fee customarily charged in the locality for similar legal services;

    d.    the dollar amount involved and the results obtained;

    e.    the time limitations imposed by the client or the circumstances;

    f.    the nature and length of the professional relationship with the client; and

    g.    my experience, reputation and ability.

18. The following services were rendered in connection with the above entitled motion and the response:

Researching the legal issues, responding and attending hearings on motion for summary judgment and motion to quash discovery; reviewing the 10 affidavits from the directors/officers of LOEN, sending opposing counsel emails and letters; responding to Defendants' motions for protection; leaving voice mails and emails in an attempt to reschedule hearings, and conferring with opposing counsel.

19. The above services were reasonable and necessary in this action for responding to the actions of defense counsel that were groundless and were brought in bad faith intended solely to delay and increase the costs of litigation in this case.

20. In my professional opinion, in view of the time that was expended on responding

598

to the motion for summary judgment, reviewing the eleven affidavits, attending hearings on the motion for summary judgment, filing responses to motions for protection from discovery, making requests to confer on discovery issues, responding to motions to quash, the services to be provided to the Plaintiffs and the other factors considered by me, reasonable and necessary attorneys' fees and costs in these motions are in the amount of $8,255.05.

_____
VICTOR S. ELGOHARY

SUBSCRIBED AND SWORN to before me, the undersigned notary public, on this 27th day of September 2013.

_____
Notary Public in and for the State of Texas

599